[Civ. No. 48474. First Dist., Div. One. May 19, 1982.]

CONTRA COSTA THEATRE, INC., Plaintiff and Appellant, v. REDEVELOPMENT AGENCY OF THE CITY OF CONCORD et al., Defendants and Respondents.

COUNSEL

Samuel L. Holmes and Angell, Holmes & Lea for Plaintiff and Appellant.

Lee C. Rosenthal, Barry R. Lipman, Steven H. Goldfarb and Goldfarb & Owens for Defendants and Respondents.

OPINION

**NEWSOM, J.**—The present appeal arises in the following circumstances.

Appellant was the lessee of a parcel of property in the City of Concord on which it operated an outdoor motion picture theatre.

Respondent Redevelopment Agency of the City of Concord (hereafter the Agency), a public body, entered into an agreement with Delta Bingham Joint Venture (hereafter Delta) on January 16, 1978, which provided that the Agency would acquire appellant's leasehold interest and convey it to Delta for redevelopment. The leasehold, at the time, was being condemned in an action brought by the Agency. Prior to the agreement, Delta acquired the right to purchase the fee interest in the property from its owner. The Agency's acquisition of the leasehold interest and resale to Delta would thus allow redevelopment of the property.

To accomplish the acquisition of the leasehold interest, prior to the execution of the agreement, the Agency as required by law published a notice of public hearing in a newspaper of general circulation between December 30, 1977, and January 6, 1978, which included a statement that information concerning appellant's leasehold interest, its proposed purchase by the Agency and resale to Delta was available for public inspection and copying.

This summary, prepared by the Agency, stated that both the estimated value and purchase price of the leasehold interest were "currently unknown." Since the resale price for the property to be paid by Delta was tied to its cost to the Agency, no precise sale price was stated. However, the summary disclosed that Delta would reimburse the Agency for all costs of acquisition pursuant to the agreement and based upon a formula stated therein.

The single issue before us is whether the notice and disclosure summary prepared by the respondent condemner satisfied the requirements of Health and Safety Code section 33433. Holding that it did, the trial court granted respondents' summary judgment motion and entered judgment against appellant.

Section 33433 of the Health and Safety Code directs redevelopment agencies to post for public inspection and reproduction a copy of the proposed sale or lease and a "summary" of its terms, including: the *cost* of the acquisition to the agency; the *value* of the property interest acquired; the *resale price* to be paid for the property by the developer; and an *explanation* for the difference, if any, between the fair market value and the resale price of the property.

Appellant's sole contention is that the Agency's summary fails to specify, in fixed terms, the cost of respondents' leasehold interest, its value and sale price, and an explanation for the difference between the sale price and the fair market value of the interest, as required by section 33433. The defective summary, appellant submits, renders the agreement invalid and the expenditure of tax increment funds for the acquisition of respondents' leasehold interest unlawful.

The Agency responds that the summary and attached agreement state a "formula" from which the tax cost to the Agency for the property interest can be determined, and suffices under section 33433 without stating precise figures.

864

The challenged "formula" specifies that Delta was to immediately pay all acquisition costs incurred by the Agency, including attorney fees and condemnation judgments, up to $250,000 and over $500,000. Any costs between $250,000 and $500,000 were to be paid by Delta on a deferred basis, in part from increases in property taxes which would result from Delta's development of the property.

When the agreement was executed and the summary was prepared, respondents' leasehold interest had not yet been acquired by the Agency, nor had the precise cost of acquisition yet been determined. Consequently, respondents insist, recitation of a "formula" instead of precise figures was dictated by the nature of the acquisition, and under the circumstances here presented complies with the disclosure requirements of Health and Safety Code section 33433.

Resolution of the issue is in large part a question of statutory interpretation, for which we receive guidance from well-established interpretive rules.

■ A primary goal of statutory construction is ascertainment of the legislative intent so that the purpose of the law may be effectuated. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859].) Statutes should be given a reasonable interpretation which comports with the apparent purpose and intent of the Legislature. (*In re Ruben M.* (1979) 96 Cal.App.3d 690, 697 [158 Cal.Rptr. 197]; *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1025 [157 Cal.Rptr. 612]; *Cory* v. *Golden State Bank* (1979) 95 Cal.App.3d 360, 367 [157 Cal.Rptr. 538].) Statutory language must be read in context, keeping in mind the nature and purpose of the enactment, and must be given such interpretation as will promote rather than defeat the objective of the law. (*Pennisi* v. *Department of Fish & Game* (1979) 97 Cal.App.3d 268, 272 [158 Cal.Rptr. 683]; *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].) In fact, as noted in *People* v. *Davis* (1978) 85 Cal.App.3d 916, 924 [149 Cal. Rptr. 777]: ". . . a persuasive and basic principle of statutory construction provides that legislative intent should prevail over a literal or plain-meaning construction." ■ And, as expressed in *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 233-234 [138 Cal.Rptr. 634]: "The legislative intent may be ascertained not only by considering the words used, but also taking into account other matters as well, such as the objects in view, the evils to be remedied, the legislative history, public policy and contemporaneous administrative construction."

The primary objective of section 33433 is clearly that of promoting public awareness of redevelopment acquisitions. The essential terms of such acquisitions are to be disclosed prior to the public hearing upon which approval of the redevelopment project is preconditioned. Redevelopment agencies thereby remain accountable to the public, and tax increment monies will be spent only after informed public involvement.

Prior to 1976, section 33433 prohibited resale of property purchased with tax increment funds at less than fair market value. Now, however, section 33433 permits a less-than-market value resale following disclosure of essential terms. The obvious focus of the law is upon affording interested persons adequate notice, information and a hearing prior to the sale of any property interest acquired with tax increment funds. Section 33433 particularly reveals a legislative intent to ensure disclosure of the *comparison* between the acquisition cost of fair market value of the property interest and its resale price, so that expenditure of tax funds can be monitored and fraud or corruption avoided. The statute very clearly permits less-than-market-value transactions provided full disclosure is made.

We are of the opinion that the summary prepared by the respondent Agency here comports with the requirements of section 33433 by providing ample information for those interested in assessing the fairness and the tax cost of the transaction.

While no figures are stated, the summary discloses both the "cost of the agreement" to the Agency and the "estimated value of the interest to be conveyed." No actual "purchase price" is stated, but a comparison between the acquisition cost and resale price is reflected in the terms as stated in the agreement and summary, and from the terms of the summary, interested persons are given general access to all pertinent information.

And finally, the disclosures provided in the summary are all that are practically possible, since the Agency had not yet acquired the property interest and could thus not precisely state a fixed price. Nothing in section 33433 indicates a legislative intent to prevent redevelopment agencies from contracting to sell property to be acquired in the future, as impliedly argued by appellant.

Appellant also argues that the summary violates the letter and spirit of section 33433 in its failure to account for (1) the possibility that the Agency's acquisition costs will be so great that the developer will fail or refuse to perform its contractual obligations, and (2) that goodwill damages might be assessed as condemnation costs. The statute, however, does not contemplate disclosure of either of these contingencies, both of which are as likely to occur where a fixed price summary is prepared as in cases like the one at issue. And, in fact, the summary at issue here is more likely to account for goodwill damages or other unforeseen costs than a fixed-price summary, since it leaves the essential terms open but states that *all* costs are to be paid by the developer.

We accordingly find that the type of "formula" disclosure prepared by the respondent Agency here substantially complies with the relevant statutory requirements. (*Card* v. *Community Redevelopment Agency* (1976) 61 Cal.App.3d 570, 579 [131 Cal.Rptr. 153]; *Sanguinetti* v. *City Council* (1965) 231 Cal.App.2d 813, 818-820 [42 Cal.Rptr. 268].)[1] The order of the trial court granting summary judgment in favor of respondents was correct.

The judgment is affirmed.

Elkington, Acting P. J., and Levins, J.,* concurred.

---

[1] In both cited cases, the substantial compliance rule was applied to analogous provisions of the Community Redevelopment Law.

*Assigned by the Chairperson of the Judicial Council.