[Civ. No. 26963. Fourth Dist., Div. One. Sept. 13, 1983.]

NATIONAL CITY BUSINESS ASSOCIATION,
Plaintiff and Appellant, v.
CITY OF NATIONAL CITY et al., Defendants and Respondents.

COUNSEL

Hitt, Hartwell & Knight, Patrice B. Rinaldo and Dennis K. Knight for Plaintiff and Appellant.

Donald F. McLean, Jr., City Attorney, for Defendants and Respondents.

OPINION

**BROWN (Gerald), P. J.**—The National City Business Association (Association) appeals an order granting a writ of mandate requiring the City

Council of National City (City) to reconsider the City's redevelopment plan. The Association sought to block the redevelopment plan by petitioning for a writ of mandate and declaratory relief. The petition alleged numerous illegalities in both the proceedings leading up to the enactment of the plan and the plan itself. The superior court found the plan defective in that it did not explain how some of the problems in the downtown area of the City would be cured rather than simply moved to another location. The matter was remanded to the city council to consider that factor. The court, however, found no merit in any of the Association's other allegations.

The City says the order granting the writ is nonappealable under Code of Civil Procedure section 904.1; further, the order remands the plan to the City for further consideration and is not final. We analyze the order.

The court found the City complied with all requirements of law for the enactment of the ordinance adopting the plan, the ordinance complied with applicable law and Association contentions to the contrary were without merit. The court nevertheless remanded for further findings and determination on the effect on surrounding areas of elimination of crime-generating activities within the project area "[t]he fundamental issue which the court cannot find the council has faced, is whether the project will eliminate the blight or whether it will merely move it a few blocks down the street." The writ of mandate issued to implement the order referred to the crime-generating activities as functional blight and ordered the City to consider the "displacement of blight" to include its effect on sailors and "their predators," and prostitutes, new motels and expected tourist business.

Blighted areas are characterized by buildings unfit and unsafe for occupancy and conducive, among other things, to juvenile delinquency and crime for a number of reasons—defective design, faulty interior arrangements, high density population and overcrowding, inadequate provision for light, sanitation and open spaces and age, dilapidation and shifting of uses (Health & Saf. Code, § 33031). Blighted areas are also characterized as properties which suffer from economic dislocation, deterioration or disuse by reason of physical factors such as faulty planning, improper subdivision, inadequacy of public improvements and potential water submergence (Health & Saf. Code, § 33032). Blighted areas contribute to problems of and expenditures for crime prevention, correction, prosecution and punishment (Health & Saf. Code, § 33035). It is the public policy of the state rehabilitation of blighted areas shall not be undertaken and operated as to exchange ". . . new slums for old slums or as to congest individuals from one slum to another slum." (Health & Saf. Code, § 33039.)

The ordinance adopting the plan found and determined, as required by law, the project area was blighted, the plan would develop the area consistent with the Community Redevelopment Law and would promote the public peace, health, safety and welfare of the City (Health & Saf. Code, § 33367). The findings of the court the ordinance complied with requirements of law necessarily includes a finding redevelopment would not impact on other areas. The remand to the City concerned the speculative effect of relocating crime-generating business, a criterion not essential to the required finding of blight in the project area nor included within policy constraints of relocating individuals from one slum to another. Further, the order did not require a return to the writ be filed by the City, and the court did not expressly retain jurisdiction to hear further proceedings. The City urges us to hear the appeal on the merits.

■ We conclude the order remanding for further proceedings is inconsistent with and superfluous to the court's determination the plan and ordinance complied with applicable law, and must be set aside. Disregarding then, the remand, the court, in effect, denied the writ. Such an order is appealable and we address the Association's contentions (*Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158 [143 Cal.Rptr. 633]).

The Association contends the superior court erred in dismissing the following allegations: (1) The City did not show the redevelopment area is "blighted" as required by the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.); (2) the project area is too broad; (3) the projected benefits of the plan are improperly speculative; and (4) the City's Redevelopment Commission was improperly formed. The Association also contends the superior court erred in applying the substantial evidence standard of review rather than the independent judgment rule and in excluding evidence that was not before the city council when it approved the redevelopment plan.

■ We consider first the question of standard of review. Where, as here, the courts are asked to review administrative action by a local agency, the substantial evidence test may be used only when the action does not "substantially affect a fundamental vested right." (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]; see also *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143-144 [93 Cal.Rptr. 234, 481 P.2d 242].) The Association argues such a right is involved here because the redevelopment plan calls for the acquisition by the City of the business properties owned by the Association's members, primarily beer bars and restaurants

patronized by sailors from a nearby naval station. The superior court rejected this argument, finding the rights of the property owners will be adequately protected in the condemnation proceedings which must be held before the property can be acquired under the plan. This finding, the Association contends, is incorrect because should the City prevail the propriety of the redevelopment plan will be conclusively presumed in the condemnation actions (*Redevelopment Agency* v. *Del-Camp Investments, Inc.* (1974) 38 Cal.App.3d 836, 841 [113 Cal.Rptr. 762]).

■ This objection to the superior court's finding misconstrues the nature of a property owner's rights. Article I, section 19 of the California Constitution and the Fifth Amendment of the United States Constitution guarantee the right to not have one's property taken without just compensation; there is no *fundamental* right to not have one's property taken *at all*. This is clear from the nature of the government's burden to establish its authority to exercise its eminent domain power. If a property owner enjoyed a fundamental right to refuse to sell his property to the government even for just compensation, the government would have a heavy burden to justify overriding that right and the courts would strictly scrutinize any effort to do so (*Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 48-49 [157 Cal.Rptr. 855, 599 P.2d 46]). That is not, however, the case. A governmental entity may meet its burden to show it is condemning a piece of property for a proper public use, and thus justify its exercise of the eminent domain power, simply by passing a resolution declaring a proper public use (Code Civ. Proc., § 1245.250). Once such a resolution is passed, the burden on the public use issue shifts to the property owner, and that burden may be met only by a showing of gross abuse of discretion by the condemner (14 Dankert, Cal. Real Estate Law and Practice (1982) § 507.32(2), pp. 507-49 through 507-50). ■ The use of this procedure shows the only fundamental right involved in a condemnation proceeding is the right to receive just compensation. As the superior court held, that right will be protected here in future proceedings. The superior court correctly found enactment of the redevelopment plan affects no fundamental right, and, thus, may be reviewed under the substantial evidence test. (See *Regus* v. *City of Baldwin Park* (1977) 70 Cal.App.3d 968, 975 [139 Cal.Rptr. 196].)

Application of the substantial evidence standard of review resolves the question of whether the superior court properly excluded evidence that was not before the city council. ■ Substantial evidence review of administrative action is limited to the record made before the administrative agency (*Krater* v. *City of Los Angeles* (1982) 130 Cal.App.3d 839, 844 [181 Cal.Rptr. 923]; *McMillan* v. *American Gen. Fin. Corp.* (1976) 60

Cal.App.3d 175, 186 [131 Cal.Rptr. 462]); the superior court properly excluded all evidence outside the administrative record.

The Association contends even under the substantial evidence test there is insufficient evidence here of the primary prerequisite to a redevelopment plan: "blight" in the area to be redeveloped. Absent blight, there is no authority for a city to act under the Community Redevelopment Law (*Sweetwater Valley Civic Assn.* v. *City of National City* (1976) 18 Cal.3d 270, 277-278 [133 Cal.Rptr. 859, 555 P.2d 1099]; *Regus* v. *City of Baldwin Park, supra,* 70 Cal.App.3d 968, 977-978). "A blighted area is one which is characterized by one or more of those conditions set forth in sections 33031 or 33032, causing a reduction of, or lack of, proper utilization of the area to such an extent that it constitutes a serious physical, social, or economic burden on the community which cannot reasonably be expected to be reversed or alleviated by private enterprise acting alone." (Health & Saf. Code, § 33030.)

Section 33031 focuses on the buildings and structures in the proposed redevelopment area, stating blight is characterized by structures "which are unfit or unsafe to occupy . . . and are conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, and crime because of any one or a combination of the following factors:

"(a) Defective design and character of physical construction.

"(b) Faulty interior arrangement and exterior spacing.

"(c) High density of population and overcrowding.

"(d) Inadequate provision for ventilation, light, sanitation, open spaces, and recreation facilities.

"(e) Age, obsolescence, deterioration, dilapidation, mixed character, or shifting of uses."

Section 33032 allows a finding of blight if the area contains "properties which suffer from economic dislocation, deterioration, or disuse because of one or more of the following factors:

"(a) An economic dislocation, deterioration, or disuse resulting from faulty planning.

"(b) The subdividing and sale of lots of irregular form and shape and inadequate size for proper usefulness and development.

"(c) The laying out of lots in disregard of the contours and other topography or physical characteristics of the ground and surrounding conditions.

"(d) The existence of inadequate public improvements, public facilities, open spaces, and utilities which cannot be remedied by private or governmental action without redevelopment.

"(e) A prevalence of depreciated values, impaired investments, and social and economic maladjustment.

"(f) The existence of lots or other areas which are subject to being submerged by water; provided that any ecologically valuable existing features in such areas shall, to the maximum extent feasible, be preserved." A redevelopment area may include lands and improvements which are not blighted if the area as a whole is predominated by blight or if it is necessary to include them in the redevelopment project to effectively redevelop the area of which they are a part (Health & Saf. Code, § 33321).

In determining whether the project area here is blighted within the terms of these provisions, two types of areas must be considered. The City's plan calls for redevelopment of a portion of the downtown region, the "acquisition areas" which will be purchased by the City, and a large residential area, the "neighborhood improvement areas," which will be redeveloped through home improvement loans to individual homeowners and the upgrading of public facilities. The City prepared separate reports on the blight in each of the two areas; we review the sufficiency of each of those reports as blight must be present in both areas for the plan to be legal (*Regus* v. *City of Baldwin Park, supra,* 70 Cal.App.3d 968, 981).

■ There is ample evidence of blight in the downtown acquisition areas. Structural blight of the type referred to in section 33031 is clearly present as an inspection of the foundations, floors, walls, plumbing, wiring, etc. of the structures in the areas found 90 percent of the buildings to be deficient and in 60 percent of them rehabilitation is not even feasible. The crime rate in the central part of the acquisition area is 50 percent higher than the rate for the city as a whole. This further supports a finding of blight as sections 33031 and 33035, subdivision (c) both recognize increased crime and excessive costs of crime prevention, prosecution and punishment as some of the primary effects of a blighted area. Furthermore, many of the businesses and structures in the acquisition areas do not conform to the City's general plan. Substantial evidence supports the superior court's finding of blight in the downtown acquisition areas.

Blight in the neighborhood improvement areas is a closer question. The City's report admits there is no extensive structural or functional blight in those areas. However, 34 percent of the homes in the areas were found to be structurally deficient; there is some support for a finding of the type of blight defined by section 33031. Furthermore, many of the public improvements such as sewer and water systems, storm drainage, sidewalks and curbing in the areas are in need of repair, a factor recognized by section 33032, subdivision (d) as indicative of blight. Beyond these factors, the social makeup of the area shows a need for redevelopment. Health and Safety Code section 33039 says a principal cause of blight and the need for redevelopment is the inability of the residents of the area to combat neighborhood deterioration due to low incomes and racial discrimination. These problems exist in the neighborhood improvement areas here as almost 60 percent of the households are low income and over 35 percent of them are racial minorities. By making home improvement loans under the redevelopment plan to these households, the City will preserve and possibly expand the supply of adequate low income housing, one of the fundamental purposes of redevelopment (Health & Saf. Code, § 33071; *Redevelopment Agency* v. *Hayes* (1954) 122 Cal.App.2d 777, 797-798 [266 P.2d 105], cert. den. 348 U.S. 897 [99 L.Ed. 705, 75 S.Ct. 214]).

The propriety of inclusion of the neighborhood improvement areas in the redevelopment plan is also supported by the likelihood of continued deterioration of the areas absent redevelopment due to the low incomes of the residents and the already faulty public improvements. " 'Blighted area' urban redevelopment legislation aims at preventing the causes of slums, even while the area is still in the process of deteriorating, before the area becomes so bad as to be totally unusable; it is thus the process of deterioration which constitutes the 'blight,' not the total deterioration itself." (Annot., Urban Renewal Statutes—"Blighted Area" (1972) 45 A.L.R.3d 1096, 1103.) The superior court did not err in finding the City made a sufficient showing of need for redevelopment in the neighborhood improvement areas.

The Association contends all the problems in the redevelopment areas do not support a finding of blight, because the problems can be cured by private enterprise. However, it points to no evidence in the record to support this; a redevelopment plan may not be overturned on the basis of a speculative argument regarding possible private investment in the area at some future time (*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 45 [37 Cal.Rptr. 74, 389 S.Ct. 538], cert. den. 379 U.S. 899 [13 L.Ed.2d 174, 85 S.Ct. 185]). The Association's claim the redevelopment plan is faulty because the businesses the plan envisions coming into the area will not succeed is also a matter of speculation, and is not within the limits of

our review (*Redevelopment Agency* v. *Hayes, supra,* 122 Cal.App.2d 777, 798).

The Association's contention including the neighborhood improvement areas in the project makes the plan overbroad is nothing but a restatement of its claim those areas are not blighted and thus may not be the subject of redevelopment. As explained above, the conditions in those areas do show a need for redevelopment; the overbreadth argument is meritless.

■ The Association's final contention is all acts of the City's community redevelopment commission, including the redevelopment plan itself, are illegal because the commission has only five members while seven are required. A redevelopment agency must have five members (Health & Saf. Code, § 33110). A local legislative body, the city council here, may declare itself to be the agency rather than appointing five other members (Health & Saf. Code, § 33200). That was done here as the commission is made up of the five members of the city council. The problem lies in the fact the council created a "commission" rather than an "agency." Under Health and Safety Code section 33201 a legislative body which has declared itself to be the redevelopment agency *may* create a redevelopment commission. Such a commission must have seven members. The city council here was not required to create a commission, but once it chose to do so it erred by comprising the commission, like the agency, of only its own members. The error does not, however, require a reversal because it caused no prejudice to the Association. A redevelopment agency and a redevelopment commission perform the same functions. (See Health & Saf. Code, § 33202.) By forming a commission, the city council did not invest itself with any greater power or authority. The council simply took an extra, erroneous and meaningless procedural step which does not affect any substantive issue.

The order is modified by deleting any remand to the City for further proceedings, and as such, being an order denying the petition, is affirmed.

Work, J., and Butler, J., concurred.

A petition for a rehearing was denied October 12, 1983, and appellant's petition for a hearing by the Supreme Court was denied December 28, 1983.