[No. A047685. First Dist., Div Two. Oct. 10, 1991.]

FRANKLIN-McKINLEY SCHOOL DISTRICT, Plaintiff and Appellant, v. CITY OF SAN JOSE et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for partial publication. The portions to be published follow.

1600

**COUNSEL**

Rutan & Tucker, Jeffrey M. Oderman, Barry L. Adams and Chester A. Puchalski for Plaintiff and Appellant.

Joan R. Gallo, City Attorney, George Rios, Assistant City Attorney, and Mollie J. Dent, Deputy City Attorney, for Defendants and Respondents.

OPINION

KLINE, P. J.—

*Introduction*

Defendant City of San Jose (City) on April 7, 1988, adopted Ordinances Nos. 22758 through 22761 approving redevelopment plans for three new redevelopment project areas (Alum Rock Avenue Project Area, East Santa Clara Street Project Area, and Almaden-Gateway Project Area) and merging two of the three new areas (Alum Rock Avenue Project Area and East Santa Clara Street Project Area) with nine preexisting redevelopment project areas in San Jose. On June 1, 1988, plaintiff Franklin-McKinley School District (District) filed an action to determine the validity of these redevelopment projects (Code Civ. Proc., § 863 and Health & Saf. Code, §§ 33500, 33501[1]) and also sought injunctive relief.[2]

Plaintiff is a school district whose boundaries do not include any property in the three new redevelopment project areas, but whose boundaries do include the Rincon de Los Esteros Project Area, one of the nine preexisting redevelopment project areas which were merged.[3]

The trial court rendered judgment for defendants, concluding that District lacked standing to prosecute the action; but also finding, in the alternative, that the administrative record did not show procedural errors sufficient to invalidate the ordinances and that substantial evidence supported the findings of the City council.

District appeals the court's judgment validating the projects, contending: (1) it is an "interested person" within the meaning of Code of Civil Procedure section 863 and is entitled to bring a validating action challenging the

[1]All statutory references are to the Health and Safety Code, unless otherwise indicated. References to "plans" are to the various redevelopment plans, unless otherwise indicated.

[2]The record does not contain a copy of the complaint; however, it is evident from the record that District challenged the projects in a validating action.

Ordinance No. 22761.1, merging the Almaden-Gateway Redevelopment Project Area with the other project areas was not contained in the record below. District contends it inadvertently omitted this ordinance from the record, but that it challenged the merger for all three new project areas below and on this appeal. We may take judicial notice that the city council adopted Ordinance No. 22761.1 on the same date as it adopted the other redevelopment and merger ordinances. (Evid. Code, §§ 452, subd. (b) and 459.) However, this merger ordinance was never directly challenged in the validating action below. It was not mentioned by number in the complaint or summonses. The trial court never ruled on its validity. In fact, the trial court specifically referred to "the merger of *two* of the Redevelopment Project areas" in its "Memorandum Decision." (Italics added.) The validity of Ordinance No. 22761.1 is not before us on this appeal.

[3]The validity of the nine preexisting projects is not at issue.

projects; (2) the redevelopment plans, reports, and preliminary reports prepared by the San Jose Redevelopment Agency (Agency) are defective for failing to include the minimum level of information required by the Community Redevelopment Law (§ 33000 et seq.); (3) the findings in the ordinances adopting the plans are unsupported by substantial evidence; and (4) the public hearing notices on the plans are deficient under sections 33349 and 33350.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## II.

### Standard of Review

■ We review proceedings arising under the Community Redevelopment Law in accordance with the substantial evidence rule. (E.g., *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 39 [37 Cal.Rptr. 74, 389 P.2d 538]; *Sweetwater Valley Civic Assn.* v. *City of National City* [1976] 18 Cal.3d 270 [133 Cal.Rptr. 859, 555 P.2d 1099]; *Fosselman's Inc.* v. *City of Alhambra* (1986) 178 Cal.App.3d 806, 810 [224 Cal.Rptr. 361]; *Regus* v. *City of Baldwin Park* [1977] 70 Cal.App.3d 968, 975 [139 Cal.Rptr. 196].) Our review is limited to the record made before the administrative agency. (*National City Business Assn.* v. *City of National City* (1983) 146 Cal.App.3d 1060, 1065-1066 [194 Cal.Rptr. 707].)

The District, relying upon cases arising under California Environmental Quality Act (CEQA) and National Environmental Policy Act (NEPA), argues that " '[s]ubstantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute,' as distinguished from 'mere technical imperfections of form.' [Citations.]" (*Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 [176 Cal.Rptr. 620], italics in original.) We agree that the question of substantial compliance must be taken seriously, and the courts do so. (See *Emmington* v. *Solano County Redevelopment Agency* (1987) 195 Cal.App.3d 491 [237 Cal.Rptr. 636] [inadequate evidence of blight to support a redevelopment plan]; *Sweetwater Valley Civic Assn.* v. *City of National City, supra,* at p. 277 [same]; *Regus* v. *City of Baldwin Park, supra,* at p. 983 [same].)

Resolution of the issues presented here is "in large part a question of statutory interpretation, for which we receive guidance from well-established

---

*See footnote, *ante*, page 1599.

interpretative rules." (*Contra Costa Theatre, Inc.* v. *Redevelopment Agency* (1982) 131 Cal.App.3d 860, 864 [184 Cal.Rptr. 630].) ██ "A primary goal of statutory construction is ascertainment of the legislative intent so that the purpose of the law may be effectuated. [Citation.] Statutes should be given a reasonable interpretation which comports with the apparent purpose and intent of the legislature. [Citations.] Statutory language must be read in context, keeping in mind the nature and purpose of the enactment, and must be given such interpretation as will promote rather than defeat the objective of the law. [Citations.]" (*Ibid.*)

██ In assessing compliance with statutory mandates, cases measuring the adequacy of general plans and environmental impact reports against the requirements of CEQA may provide some guidance. However, they are *not* determinative. This is so because CEQA and its federal counterpart NEPA have a purpose and a focus which differ in some significant respects from the Community Redevelopment Law. The environmental impact report (EIR) mandated by CEQA, is fundamentally a *disclosure* document. " 'The EIR is not an action document. Its purpose is to inform governmental decision makers and to focus the political process upon their action affecting the environment. . . .'" (Italics omitted.) (*Twain Harte Homeowners Assn.* v. *County of Tuolumne* (1982) 138 Cal.App.3d 664, 673 [188 Cal.Rptr. 233], quoting *Karlson* v. *City of Camarillo* (1980) 100 Cal.App.3d 789, 804-805 [161 Cal.Rptr. 260].) "CEQA is essentially an environmental full-disclosure statute, and the EIR is the method of disclosure. [Citation.] An EIR 'demonstrate[s] to an apprehensive citizenry that the agency has in fact analyzed and considered the ecological implications of its action.' [Citation.]" (*Emmington* v. *Solano County Redevelopment Agency, supra,* 195 Cal.App.3d at p. 502.) In contrast, the redevelopment plan is fundamentally an *action* document. The Community Redevelopment Law (§ 33300 et seq.) was enacted to promote sound development and redevelopment of blighted areas. (§ 33037, subd. (a).) "[R]edevelopment is an extraordinary remedy that allows private property to be taken from one person through the power of eminent domain and transferred through the redevelopment agency to a private developer, all at public expense." (*Emmington* v. *Solano County Redevelopment Agency, supra,* 195 Cal.App.3d at p. 501, fn. 14.)

Certainly, aspects of the Community Redevelopment Law serve a disclosure function as well. In part because of the "extraordinary" powers given to local agencies and governments pursuing redevelopment, the law recognizes the importance of disclosure, so far as reasonably possible, of information from which affected taxing agencies and the public can ascertain the benefits and burdens of a particular redevelopment project proposal; information which can serve as a basis for public and agency participation in the ongoing

analysis of the merits of the proposed project. In 1984, the Community Redevelopment Law was amended to provide additional information to affected taxing agencies about proposed redevelopment projects. According to the digest of the bill prepared for the Assembly Committee on Revenue and Taxation, the purpose of the amendments were "to eliminate abuses of the redevelopment process," in part by "[i]mproving the existing plan adoption process so that taxing agencies receive more specific information earlier, allowing them to better assess the fiscal impact of proposed projects; . . . ." (Assem. Com. on Rev. & Tax., Digest of Assem. Bill No. 203 (Jan. 17, 1984) p. 6.)[8]

A second reason that cases assessing the adequacy of an EIR or general plan under CEQA may not be directly analogous to similar assessments of the adequacy of a redevelopment plan, report, or preliminary report, is the imposition of a special standard of prejudice in review of validating actions via Code of Civil Procedure section 866. That section provides: "The court hearing the action shall disregard any error, irregularity, or omission which does not affect the substantial rights of the parties." (See *Card* v. *Community Redevelopment Agency* [1976] 61 Cal.App.3d 570 [131 Cal.Rptr. 153].) This section becomes even more important here, where District has asserted that it is not acting as a representative of any class, nor is it an association composed of members whose interests it is forwarding. Rather, it is seeking redress for asserted deficiencies in the projects and supporting documentation which adversely affect its own interests.

With these principles in mind, we turn to a review of the particular claims raised by District.

### III.

### *Adequacy of the Redevelopment Plans*

■ District urges that the redevelopment plans inadequately describe the projects, in violation of section 33333 and related provisions. We cannot agree.

---

[8]As pointed out in a Senate Local Government Committee "Staff Report on Tax Increment Financing of Redevelopment" (Dec. 5, 1975): "The procedure by which redevelopment plans are prepared and adopted determines, to a large degree, their quality. If the plan and details of its impacts on affected taxing jurisdictions receives widespread publicity and is critically reviewed and commented upon by affected persons and public agencies, it is more likely that a reasonable plan will be adopted . . . . [T]he plan itself should be required to be prepared in accordance with more specific statutory requirements. The vagueness of many redevelopment plans makes it impossible for affected agencies and citizens to offer meaningful comments. Although precise specificity is undesirable and flexibility is necessary, enough detail should be provided to allow intelligent opinions to be formed regarding the plan." (At pp. 26-27.)

Section 33333 provides:

"Every redevelopment plan shall show by diagram and in general terms:

"(a) The approximate amount of open space to be provided and street layout.

"(b) Limitations on type, size, height, number, and proposed use of buildings.

"(c) The approximate number of dwelling units.

"(d) The property to be devoted to public purposes and the nature of such purposes."

The trial court found that although the plans did not specifically set forth these matters in detail, they repeatedly referred to City's general plan, in effect incorporating the general plan. The court found that when taken together with the general plan, the redevelopment plans contained adequate information to satisfy statutory requirements. District argues by analogy to CEQA cases that City may not use the general plan to fill any gaps in the redevelopment plans as all documentation should have been compiled into a single format report. (See *Emmington v. Solano County Redevelopment Agency, supra,* 195 Cal.App.3d 491, 503.)[9] As a preliminary matter, we reject a categorical rule that no other documents may be incorporated into a redevelopment plan or may serve to satisfy section 33333 requirements. Rather, it seems to us that in *this* context, unlike that of EIR assessment, if the relevant information is *readily* accessible from the general plan without unreasonable effort by interested parties, no substantial rights are impacted. (Code Civ. Proc., § 866.)[10]

The information sought by section 33333 was adequately set forth in the redevelopment plans, when considered together with the City's general plan.

---

[9]Although *Emmington, supra,* involved the adequacy of a redevelopment plan, its discussion of the necessity for a single format report came in a section in which it was analyzing the need under CEQA for an EIR in connection with the redevelopment plan. (195 Cal.App.3d at pp. 502-503.)

[10]In this connection we point out that in *Emmington,* the documentation assertedly analyzing the environmental consequences contained over 2,000 pages and included 19 previously prepared EIR's and planning documents spanning the course of 8 years. (195 Cal.App.3d at p. 502.) The court there found that "the sheer bulk of material an interested citizen was referred to, without any guidance on how to proceed, served to discourage rather than encourage participation in the public review process." (*Id.,* at p. 503.) Such is certainly not the case here.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## IV.

### *Preliminary Reports and Project Reports*

■ The District challenges the adequacy of the preliminary reports submitted to affected taxing entities (§ 33344.5) [fn. 19 nonpub.] and the reports accompanying the redevelopment plans submitted to the City council (§ 33352). [fn. 20 nonpub.] City responds, combining its argument on both section 33344.5 preliminary reports and section 33352 reports, utilizing information found in both sets to support the adequacy of each. The difficulty with the City's approach is that the preliminary reports and the project reports were generated at different times, serve different functions and are addressed to different entities.

The preliminary report prepared by the agency is provided to the fiscal review committee early in the process. Here, the three preliminary reports are dated between March and June 1987. The function of the preliminary report is to "[i]mprov[e] the existing plan adoption process so that taking agencies receive more specific information earlier, allowing them to better assess the fiscal impact of proposed projects; . . . ." (Assem. Com. on Rev. & Tax., Digest of Assem. Bill No. 203, *supra*, p. 6.) On the other hand, the report accompanying the redevelopment plan serves to summarize the preliminary proceedings which are a prerequisite to formation of the new redevelopment project areas and it provides the evidentiary justification for proceeding with the redevelopment plan. The City council must "evaluate the report of the agency" before adopting the redevelopment plan. (§ 33363.) The report is submitted by the agency to the legislative body late in the process. (The reports in this case are dated March 1988, near the date of the public hearings.) The report contains many other reports and documents, including the report of the fiscal review committee, if any (§ 33352, subd. (k)), prepared in response to the preliminary report and the Agency's analysis of and response to the report of the fiscal review committee. (§ 33352, subd. (m).)

We have concluded that it is reasonable to allow information from a document in existence at the time, and either incorporated into another document or accompanying the document, to be used to meet statutory requirements. Thus, information contained in the preliminary reports may be

*See footnote, *ante*, page 1599.

used to support the project reports submitted to the City council together with the redevelopment plans. The preliminary reports were generated first; they were responded to by the fiscal review committee, which response was in turn analyzed by the Agency. These documents accompanied the project report and were clearly before the City council as it reviewed the project report.

The same reasoning militates *against* allowing information found in the section 33352 project reports to support the preliminary reports. The Agency is to prepare the preliminary report early in the process and to submit it to affected taxing agencies so that they may evaluate the impacts of the proposed redevelopment and respond to the legislative body. To argue that alleged inadequacies in a preliminary report may be remedied by information found in the later generated project report ignores the functions of both documents. We must look to the information contained in the preliminary report itself and in other documents either accompanying the preliminary report or before the affected taxing agencies or fiscal review committee at the time to determine the adequacy of information contained therein.

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## CONCLUSION

Therefore, we affirm the judgment validating Ordinances Nos. 22758 through 22761 adopting redevelopment plans for the Alum Rock Avenue Project Area, the East Santa Clara Street Project Area, and the Almaden-Gateway Project Area, and effecting the merger of those areas with existing redevelopment project areas.

Benson, J., and Peterson, J., concurred.

*See footnote, *ante,* page 1599.