[No. D006826. Fourth Dist., Div. One. Aug. 8, 1989.]

COMMUNITY DEVELOPMENT COMMISSION OF THE CITY OF NATIONAL CITY, Plaintiff and Respondent, v. STEVE ASARO et al., Defendants and Appellants.

**COUNSEL**

McLean & McLean and Donald F. McLean, Jr., for Defendants and Appellants.

George H. Eiser III, City Attorney, Detisch, Christensen & Wood and Donald W. Detisch for Plaintiff and Respondent.

McDonough, Holland & Allen, Marcia Scully, Allen R. Briggs, City Attorney (Cathedral City), Thomas J. Herron, City Attorney (Chula Vista), Lynn R. McDougal, City Attorney (El Cajon), Steve F. Nord, City Attorney (Merced), William Adams, City Attorney (Palm Springs), Michael F. Dean, City Attorney (Roseville), and Bill Marsh, Assistant City Attorney (Monterey), as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**TODD, J.**—Steve and Shirley Asaro, who held a leasehold interest in a parcel condemned by the Community Development Commission of the City of National City (Commission), appeal a judgment in which the goodwill value of their restaurant was set at $328,712. The sole issues on appeal are whether the trial court used an appropriate valuation method for determining the value of the restaurant's goodwill and whether there is sufficient evidence to support the trial court's decision.

### FACTS

The Asaros operated a business known as Mario's Italian Restaurant at the intersection of 8th Street and National City Boulevard in National City. Under California's redevelopment laws, the Commission found the area to be "blighted," as that term is used in Health and Safety Code section 33030 et seq., and the blight determination was affirmed in *National City Business Assn.* v. *City of National City* (1983) 146 Cal.App.3d 1060 [194 Cal.Rptr. 707]. In 1985, the Commission filed a complaint in eminent domain, seeking to condemn the Asaros' leasehold interest in the parcel. Prior to trial, the parties settled on the value of the leasehold. Thus, the only issue at trial was the value of lost goodwill as a result of the condemnation. The parties waived a jury.

Testifying for the Asaros were Edward Neuner, an economist, and John Maggio, a certified public accountant. Neuner testified that he was valuing the loss of income stream to the defendants at $110,000. Neuner defined goodwill as follows: "Goodwill is—consists of the benefits that the owner of a business can expect to obtain in the form of earnings which earnings are attributable to a unique and special location, a skill or quality of the business services being rendered, reputation, the ambiance of the establishment insofar as this attracts patronage. It consists of all of this complex of intangibles, the bottom line aspect of which is the contribution that these intangible qualities make to the production of a net earnings stream." In response to a question about discounting the amount assigned to goodwill on the basis of eliminated risk, Neuner replied: "I understand the question, sir, but the issue is what is the value of what Mr. Asaro has lost here. He's loss [*sic*] an income stream of $110,000." Applying a 14 percent capitalization rate to the Asaros' income stream of $110,000, Neuner opined the value of the goodwill was approximately $775,000. Maggio testified the Asaros' income stream was $93,000 and applied a 9 percent capitalization rate to set the value of the lost goodwill at $963,000. Maggio said the restaurant's goodwill would have less value to others because a buyer would face additional risks.

Testifying for the Commission was Jerry Garner, a professional business appraiser, who opined the business goodwill earned $82,000 per year. Gar-

ner reached this figure by deducting a 15 percent return on the Asaros' investment in tangible assets ($109,000) from the restaurant's average net pretax income of $96,359. As to capitalization rate, Garner concluded a buyer on the open market purchasing goodwill would expect to receive 50 percent per year return on an investment in this business because of the risks involved and the location. Garner opined the value of the goodwill was $164,356.

As the above-recited facts indicate, each expert used the capitalization of excess income method to determine the value of the goodwill. (Garner places the value of the annual excess income at $82,000, Maggio at $93,000, and Neuner at $110,000.) Each expert opined a different figure for the value of goodwill *largely* because each applied a different capitalization rate to the excess income: Garner, 50 percent; Neuner, 14 percent; and Maggio, 9 percent. The variation in the rates of capitalization stemmed from the experts' different analyses of the business risks involved in the future stream of income. In other words, while the Commission's expert applied a fair market value analysis to determine the capitalization rate, the Asaros' experts based their calculations on the present value of the lost income stream.

The trial court concluded a fair market value analysis to determine the appropriate capitalization ratio was in order. The court found Neuner's capitalization rate of 13 percent was too low and Garner's capitalization rate of 50 percent was too high. However, it found Garner's testimony more persuasive than Neuner's testimony. Noting that it had examined the neighborhood, the trial court said Garner's testimony would support a 25 percent rate of capitalization and applied this rate to set the loss of goodwill at $328,712.

DISCUSSION

I

■■■ Historically, business goodwill was not an element of damages under eminent domain law.[1] As recently as 1975, the California Supreme Court reaffirmed the principle that damage to a business conducted on property condemned for public use was not compensable as a property right under the just compensation clause of the California Constitution. (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174].) But in 1975, the Legislature enacted a comprehensive revision of California's eminent domain law,

---

[1] In *Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 398 [153 P. 705], the court stated: "[I]t is the universal rule of construction that an injury or inconvenience to a business is *damnum absque injuria,* and does not form an element of the compensating damages to be awarded. [Citations.]"

which, among other things, authorizes compensation for the loss of business goodwill.

Code of Civil Procedure[2] section 1263.510 provides as follows: "(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following: [¶] (1) The loss is caused by the taking of the property or the injury to the remainder.

"(2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill.

"(3) Compensation for the loss will not be included in payments under section 7262 of the Government Code.

"(4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner.

"(b) Within the meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." In *People ex rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d 263 [203 Cal.Rptr. 772, 681 P.2d 1340], the Supreme Court, in construing section 1263.510, observed: "The remedial purpose of the statute under consideration is evident. . . . The section was enacted in response to widespread criticism of the injustice wrought by the Legislature's historic refusal to compensate condemnees whose ongoing businesses were diminished in value by a forced relocation. [Citations.] The purpose of the statute was unquestionably to provide monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location." (*Id.* at p. 270.)

Given this statutory right to compensation for loss of business goodwill, the question of how to properly value the loss of goodwill remains since section 1263.510 is silent on valuation.

We first look at *Muller,* the only Supreme Court case to analyze section 1263.510. The issue in *Muller* was whether the loss of an economically beneficial lease which did not result in reduced patronage but did result in reduced profits because of a higher rent was compensable under section

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

1263.510. Muller presented evidence of the capitalized value of his profits at the old location and evidence that the value had been lost as a result of the move. The Supreme Court rejected the government's claim that loss of the lower rent was not compensable as goodwill, holding section 1263.510 was intended to compensate Muller for this loss. (36 Cal.3d at pp. 271-272.)

The Asaros place great reliance on language in *Muller* that validates measuring goodwill by "calculating the present value of anticipated profits." (*Muller, supra,* 36 Cal.3d at p. 271, fn. omitted.) The *Muller* opinion, in explaining the capitalization of excess earnings methodology, also stated "[t]he capitalized present value of the excess earnings is computed by dividing the excess earnings figure by a percentage which reflects current interest rates." (*Id.* at p. 266, fn. 2.) The Asaros argue the *Muller* opinion, which does not discuss a fair market value analysis, supports the approach of their experts in determining the proper capitalization rate.

*Muller,* however, clearly does not limit courts to any one method of measuring goodwill. The court in *Muller* held: "The 'excess income' method used by the expert witnesses is a reasonable method of quantifying the loss even though there are other acceptable methods for evaluating goodwill." (36 Cal.3d at p. 272.) Earlier in the opinion, the court observed in a footnote: "[T]he courts have wisely maintained that there is no single acceptable method of valuing goodwill. [Citation.] Valuation methods will differ with the nature of the business or practice and with the purpose for which the evaluation is conducted. [Citation.] Nothing in this opinion is intended to restrict litigants in eminent domain actions from using other valuation methods than the one employed here." (*Id.* at p. 271, fn. 7.)[3]

Thus, while *Muller* approves one methodology for valuing goodwill as acceptable, it does not hold that such valuations must always be conducted by this method or any other particular method. Hence, contrary to the Asaros' position, *Muller* does not rule out the trial court's use here of a fair market approach to arrive at an appropriate capitalization rate.

Next, we look at California's revised statutory scheme for eminent domain proceedings. (Title 7, part 3, Code Civ. Proc., §§ 1230.010-1273.050.) Section 1230.020 provides: "Except as otherwise specifically provided by statute, the power of eminent domain may be exercised only as provided in this title." Chapter 9 of title 7 is entitled "Compensation" and begins with section 1263.010, subdivision (a), which provides: "The owner of property

---

[3] Moreover, *Muller* is distinguishable because it involved the relocation of a business while this case does not. As indicated *ante,* essentially the court in *Muller* held the value of goodwill is not limited to patronage but also includes the decrease in market value of a business caused by a forced relocation to more expensive premises.

acquired by eminent domain is entitled to compensation as provided in this chapter."[4] Section 1263.310 provides: "Compensation shall be awarded for the property taken. The measure of this compensation is the fair market value of the property taken."[5] Nothing in section 1263.510 provides for an alternate method of valuing loss of goodwill. Thus the plain language of these statutes indicates the Legislature at least sanctioned a fair market value analysis in determining the value of loss of goodwill.[6]

We also find it instructive to look at the valuation of goodwill in contexts other than eminent domain proceedings.[7] ■ For example, in marital dissolution proceedings, there is no single method of valuing goodwill that is universally accepted in all circumstances. Courts in this arena have adopted a fair market value approach (see *In re Marriage of Fortier* (1973) 34 Cal.App.3d 384, 388 [109 Cal.Rptr. 915], where the court said "the value of community goodwill is simply the market value at which the goodwill could be sold upon dissolution of the marriage, taking into consideration the expectancy of the continuity of the practice") and have rejected such an approach (see *In re Marriage of Foster* (1974) 42 Cal.App.3d 577, 584 [117 Cal.Rptr. 49], where the court said "a proper means of arriving at

---

[4] The Law Revision Commission Comment to section 1263.010 provides, in pertinent part: "This chapter [chapter 9], relating to compensation, supersedes various provisions formerly found in the eminent domain title of the Code of Civil Procedure. The elements of compensation provided in this chapter include compensation for property taken (Section 1263.310), injury to the remainder (Section 1263.410), and loss of goodwill (Section 1263.510)."

[5] Section 1263.320, subdivision (a), defines "fair market value" as "the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available."

[6] To support their contention that a fair market value approach is irrelevant to valuing goodwill, the Asaros rely on the California Law Revision Commission Comment to section 1263.510, which states in part: "The determination of loss of goodwill is governed by the rules of evidence generally applicable to such a determination and not by the special rules relating to valuation in eminent domain contained in Article 2 (commencing with Section 810) of Chapter 1 of Division 7 of the Evidence Code. See Evid. Code § 811 and Comment thereto. Thus, the provisions of Evidence Code Sections 817 and 819 that restrict admissibility of income from a business for the determination of value, damage, and benefit in no way limit admissibility of income from a business for the determination of loss of goodwill." The reliance is misplaced. The restrictive provisions in Evidence Code section 810 et seq. apply to the valuation of real property. Business goodwill is an intangible property right. Further, the Law Revision Commission Comment to Evidence Code section 811 states in relevant part: "[N]othing in this article should be deemed a limitation on the admissibility of evidence to prove loss of goodwill if such evidence is otherwise admissible."

[7] We note that in *Muller, supra,* 36 Cal.3d 263, the Supreme Court validated Muller's method of capitalizing the value of his profits on the basis that that measure of goodwill had been accepted in two marital dissolution cases: *Burton* v. *Burton* (1958) 161 Cal.App.2d 572, 576-577 [326 P.2d 855] and *Mueller* v. *Mueller* (1956) 144 Cal.App.2d 245, 252 [301 P.2d 90].

the value of such goodwill contemplates any legitimate method of evaluation that measures its present value by taking into account some past result"). Indeed, the court in *In re Marriage of Foster* observed: "The courts have not laid down rigid and unvarying rules for the determination of the value of goodwill but have indicated that each case must be determined on its own facts and circumstances and the evidence must be such as legitimately establishes value." (*Id.* at p. 583.) Similarly, we do not discern any hard and fast rule that there is an exclusive method for determining the value of the loss of goodwill in eminent domain proceedings. We conclude a market analysis is among the acceptable approaches for this type of determination.

## II

 The question remains whether sufficient evidence was presented to support the trial court's determination of the loss of goodwill here. When goodwill attaches to a business, its value is a question of fact. (*Mueller* v. *Mueller, supra,* 144 Cal.App.2d at pp. 251-252.) In *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480], an inverse condemnation case, our Supreme Court recited the well-established principles of appellate review: "In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise within the province of the trier of fact. [Citation.] 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.'* (6 Witkin, Cal. Procedure, *supra,* § 249, at p. 4241.) All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]" (Original italics.) We conclude there is substantial evidence to support the trial court's finding that a capitalization rate of 25 percent was appropriate in these circumstances and the value of the loss of the goodwill should be set at $328,712.

Although it rejected Garner's 50 percent capitalization rate, the trial court found the testimony of Garner, who advocated a fair market value analysis, more persuasive than Neuner's testimony. There is substantial evidence to support this conclusion. Garner used a split capitalization rate—one rate for tangible assets and another for intangible assets—as sanctioned by *Muller*. (*Muller, supra,* 36 Cal.3d at p. 266, fn. 2.) Neuner opined this approach was erroneous. Further, to confirm or check the accuracy of his opinion, Garner examined the goodwill price of four

somewhat comparable sales in the open market and the goodwill price of two similar investment sales. Neuner and Maggio, on the other hand, considered stock investments as a point of comparison. Also, Neuner and Maggio did not follow the approach outlined in *Muller, supra,* for determining excess earnings—namely, allocating a fair return to the tangible assets of the business and subtracting this figure from the actual net earnings. (*Ibid.*) Instead, Neuner and Maggio merely applied a capitalization rate to what they calculated was the income of the Asaros' restaurant.

Thus, it was proper for the trial court to use Garner's method—a fair market value approach—to determine the capitalization rate to be applied to the excess earnings of the business. Here, the trial court considered the opinions of the experts, and, after taking into account its own examination of the neighborhood, properly concluded a capitalization rate lower than Garner's but higher than Neuner's was appropriate. ■ In establishing the value of goodwill, opinion evidence is admissible but is not conclusive. (*Burton* v. *Burton, supra,* 161 Cal.App.2d at p. 576.) The trier of fact may also take into consideration the situation of the business premises, the amount of the patronage, the personality of the parties engaged in the business, the length of time the business has been established, and the habit of its customers in continuing to patronize the business. (*Id.* at pp. 576-577.) ■ It was within the court's discretion to reject the capitalization rates of Neuner and Garner and apply its own capitalization rate somewhere in between. (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 754 [214 Cal.Rptr. 661].) An award must generally be within the high and low valuation opinions offered. (*Redevelopment Agency* v. *Modell* (1960) 177 Cal.App.2d 321, 326-327 [2 Cal.Rptr. 245].)

Finally, we note that in essence the Asaros wanted the court to treat the profits of their restaurant as if it were an annuity subject to no risk or the minimal risk of a bank account. However, their own witnesses acknowledged their calculations took into account certain risks involved in running a business. There was sufficient evidence to support the trial court's finding that the risks involved here exceeded those of a passive investment and also those of a business located in a nonblighted area. Accordingly, the evidence was sufficient to support the trial court's conclusion that the appropriate capitalization rate here was greater than that for either of those kinds of investments.

## DISPOSITION

The judgment is affirmed; the Asaros are to recover costs. (See § 1268.720.)

Kremer, P. J., and Froehlich, J., concurred.