[No. A055648. First Dist., Div. One. Sept. 28, 1992.]

REDEVELOPMENT AGENCY OF THE CITY OF CONCORD, Plaintiff and Respondent, v.
INTERNATIONAL HOUSE OF PANCAKES, INC., Defendant and Appellant.

**COUNSEL**

Erickson, Beasley, Hewitt & Wilson, John H. Erickson and Alice M. Beasley for Defendant and Appellant.

Latham & Watkins, Jerrold A. Fadem, George Kimball and Marcia Bobb as Amici Curiae on behalf of Defendant and Appellant.

Goldfarb & Lipman, Lee C. Rosenthal, Peter Franklin and Michael Berry for Plaintiff and Respondent.

**OPINION**

**STRANKMAN, P. J.**—Section 1263.510 of the state's Eminent Domain Law (Code Civ. Proc., § 1230.010 et seq.) provides that upon proof of certain facts, the "owner of a business conducted on the property taken" shall be compensated for loss of goodwill caused by the taking.[1] The narrow question in this case is whether a franchisor who granted a franchise for

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

operation of an International House of Pancakes restaurant on property later taken in eminent domain proceedings was entitled to claim compensation under section 1263.510, even though there was no partnership, joint venture, or agency relationship between the franchisor and the franchisee. The trial court concluded that the franchisor was not an owner within the meaning of the statute; we agree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

a. *The Franchise Agreement*

Appellant is the International House of Pancakes, Inc., a Delaware corporation. Appellant owns and controls certain formulas and processes for the preparation of pancakes, which it promotes, sells, and merchandises through restaurants operating according to a standard plan under the name, "The International House of Pancakes." Respondent is the Redevelopment Agency of the City of Concord (the Agency).[2]

Appellant leased land and improvements in Concord from a private party in 1970. Appellant then subleased the property and entered into a franchise agreement with the sublessee authorizing the latter's operation of an International House of Pancakes restaurant on the premises.[3] The sublessee assigned and transferred the sublease, franchise agreement, and a related restaurant equipment lease to Towru's, Inc., a California corporation (Towru's).

According to the franchise agreement, appellant retained ownership of its trade name, goodwill, and trade secrets, but granted Towru's a franchise to use those intangibles in the operation of the restaurant at the specified location. Towru's was obligated to operate the restaurant in compliance with standard procedures established by appellant for such matters as accounting, quality control, appearance of the premises, hours of operation, merchandise sold, employees' appearance and demeanor, personnel standards and training, preparation and service of foods and beverages, and advertising. Towru's was also required to buy its food products, supplies, and materials only from appellant or its approved suppliers.

At the same time, however, the agreement provided that in all matters pertaining to operation of the restaurant, appellant and Towru's were independent contractors; neither's employees were the employees of the other.

---

[2]An amicus curiae brief has been filed on behalf of appellant by the International Franchise Association, the national trade association of the franchising industry.

[3]The terms of the franchise agreement were later amended as a result of litigation between appellant and certain of its franchisees.

The agreement stated: "Nothing in this agreement or in the relationship of the parties shall be construed to create a partnership, joint venture or agency between Franchisor and Franchisee." Subject to the provisions of the agreement, sublease, equipment lease, and standard operating procedures, Towru's was authorized "to operate said restaurant in such manner as it be determined by the Franchisee."

Towru's was required to pay an "initial fee" of over $50,000, plus rent as provided in the sublease and equipment lease. Towru's was also obligated to pay appellant: (1) the greater of 5.2 percent of gross sales each week or $100 per week, as a service charge for appellant's training, inspection, supervision, research, development, and record-keeping services; and (2) 1 percent of its gross sales each week as a service charge for advertising, public relations, and promotion.

Under the agreement, appellant was entitled to terminate the franchise only for certain specified reasons, such as the franchisee's repudiation of its payment obligations or its repeated violations of standard operating procedures remaining uncured after notice and request to cure.

b. *The Eminent Domain Proceedings*

Respondent acquired the fee interest in the property from the lessor for a street-widening project in 1988, subject to appellant's lease. Respondent filed an eminent domain complaint in 1990 to acquire appellant's leasehold interest and Towru's subleasehold interest. Respondent, appellant, and Towru's reached a settlement relating to compensation for the leasehold, leasehold improvements, and personal property. Specifically excluded from the settlement were issues of compensation for precondemnation losses, loss of goodwill, or relocation expenses.

Respondent then moved for summary judgment or summary adjudication of the issues against appellant, seeking a determination that appellant was not the owner of a business conducted on the property taken within the meaning of section 1263.510, and was therefore not entitled to any compensation for loss of goodwill.

After reviewing the franchise agreement and other exhibits submitted by the parties, the trial court granted the motion. It explained, "the franchisor in your case . . . goes to great lengths . . . to disassociate [itself] from ownership because there would be all sorts of—if you indeed were the owner there might be all sorts of adverse consequences to you in the area of taxation and the area of labor relations and all sorts of areas, and indeed one

of the reasons why people . . . choose franchising as a way of marketing their product as an alternative in other ways is they can avoid all those problems." The court also said, "And [appellant] has plenty of remedies and may already have a remedy. In future contracts—in future situations it will certainly take care of it by way of a contract. It will provide that it will get a piece of the goodwill in the future. [It] may already be able to do that with the existing—[it] can argue that the goodwill payments are really payments in fact and get a share. . . ."

Judgment was entered in favor of respondent and against appellant, and this appeal followed.[4]

## Discussion

A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) ■ Summary judgment is often characterized as a drastic remedy which must be used with caution. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Nevertheless, if there is no material fact to be tried and the sole question is whether the claim of the moving party is tenable on the undisputed facts, the trial court's obligation is to determine that issue of law. (*Pittman* v. *Pedro Petroleum Corp.* (1974) 42 Cal.App.3d 859, 862 [117 Cal.Rptr. 220].) ■ On appeal, the reviewing court determines de novo whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. (*Homestead Savings* v. *Darmiento* (1991) 230 Cal.App.3d 424, 430 [281 Cal.Rptr. 367].)

■ The provisions of the state and federal Constitutions which mandate just compensation for the taking of private property for public use do not require compensation for the loss of business goodwill. (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 831-832 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174]; *Community Development Com.* v. *Asaro* (1989) 212 Cal.App.3d 1297, 1301-1302 [261 Cal.Rptr. 231].) But section 1263.510, enacted in 1975 as part of a comprehensive legislative revision of the state's eminent domain law, does authorize at least some compensation for loss of goodwill. The Supreme Court has explained that section 1263.510 "was enacted in response to widespread criticism of the

---

[4]The court granted summary judgment after appellant stipulated that it was no longer asserting any claim for precondemnation damages or relocation benefits, and that its sole remaining claim was for loss of goodwill. Respondent has settled with franchisee Towru's on its goodwill claim.

injustice wrought by the Legislature's historic refusal to compensate condemnees whose ongoing businesses were diminished in value by a forced relocation. [Citations.] The purpose of the statute was unquestionably to provide monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location." (*People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 270 [203 Cal.Rptr. 772, 681 P.2d 1340].)

Goodwill within the meaning of section 1263.510 is broadly defined; it consists of "the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." (§ 1263.510, subd. (b).) At the same time, however, the Legislature limited the class of persons entitled to seek compensation to "[t]he *owner of a business conducted on the property taken,* or on the remainder if such property is part of a larger parcel . . . ," who proves certain facts. (§ 1263.510, subd. (a), italics added.)[5]

We preface our analysis by clarifying what is not at issue in this case. Appellant concedes that Towru's was entitled to claim at least some compensation under section 1263.510, and then argues that it had goodwill in the restaurant separate and distinct from that of Towru's, based on its own involvement in operation of the restaurant as franchisor. To reinforce that argument, appellant points out that under the terms of the franchise agreement, it expressly retained ownership of its own trade secrets, trade name, and goodwill. But as the trial court recognized, a determination of appellant's rights as against its franchisee under that agreement was outside the scope of this eminent domain action. Moreover, for purposes of respondent's summary judgment motion, consideration of whether appellant actually had its own business goodwill which was adversely affected by the condemnation would have been premature. The trial court did not reach that issue, and it need not be decided in this appeal. ▮ Instead, the trial court was confronted with a more fundamental and narrow question: was appellant among the limited group of persons entitled to seek any compensation for a

---

[5]Section 1263.510, subdivision (a), states: "The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following: [¶] (1) The loss is caused by the taking of the property or the injury to the remainder. [¶] (2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill. [¶] (3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code. [¶] (4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner."

claimed loss of goodwill under section 1263.510? Our task in this appeal is similarly circumscribed; we decide only whether the trial court correctly concluded that respondent was entitled to summary judgment because, as a matter of law, appellant was not the "owner of a business conducted on the property taken" within the meaning of section 1263.510.

We first consider appellant's contention that it qualified to prove its loss under the statute because, based on the disputed and undisputed facts, it had a separate ownership interest in the restaurant, an interest which appellant describes imprecisely as "passive."[6] The relationship between appellant and its franchisee established by the sublease, equipment lease, and franchise agreement is inconsistent with this contention, and appellant does not articulate any legal theory of ownership under which it might be deemed to be an owner of the franchisee's business.

The sublease was an ordinary commercial lease, which provided for a minimum rent plus a percentage of Towru's weekly gross revenue. Towru's was also responsible for the costs of fire and liability insurance, and for all interior and exterior maintenance and repair, except for the roof and exterior walls. Under the restaurant equipment lease, Towru's paid a specified weekly rent and was responsible for repairs and maintenance. Neither the sublease nor the equipment lease contained any exceptional provisions which could be construed to make appellant an owner of the business conducted on the leased premises.

The franchise agreement did provide that appellant retained ownership of its own trade secrets and goodwill, but that provision did not endow appellant with status as an owner of the franchisee's business. As is customary in franchise agreements (see Corp. Code, § 31005; Bus. & Prof. Code, § 20001), the agreement did require Towru's to operate the restaurant according to a plan or standards specified by appellant, but appellant cites no authority supporting the proposition that its imposition of those standards in the franchise context made it an owner of the franchisee's business for any purpose.

■ It is true that the terms of a particular franchise agreement may create an agency relationship, thereby subjecting the franchisor to vicarious liability for the torts of the franchisee, as well as liability for the contractual obligations of the franchisee incurred in the course of the agency. (See

---

[6]Appellant suggests that procedurally, if several defendants have suffered a loss of goodwill compensable under section 1263.510, the condemning agency may have to allocate the goodwill lost among those defendants pursuant to section 1260.220 (value of divided interests in property acquired by eminent domain shall be separately assessed).

generally, *Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284, 1288-1292 [6 Cal.Rptr.2d 386]; *Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1098-1100 [251 Cal.Rptr. 727]; *Wickham v. Southland Corp.* (1985) 168 Cal.App.3d 49, 53-59 [213 Cal.Rptr. 825]; *Nichols v. Arthur Murray, Inc.* (1967) 248 Cal.App.2d 610, 613-615 [56 Cal.Rptr. 728].) ■■ Had there been an agency relationship between Towru's and appellant, the latter's claim of ownership might have had more persuasive force. Similarly, had appellant been operating the restaurant in a joint venture or partnership with Towru's (see *People v. Park* (1978) 87 Cal.App.3d 550, 564 [151 Cal.Rptr. 146]; Civ. Code, § 682), appellant's status as an owner would have been difficult to dispute.

■■■■■ Instead, the franchise agreement stated unequivocally that the relationship between the parties was not a partnership, joint venture, or agency, and appellant does not contend otherwise.[7] ■■ Furthermore, appellant did not have the right to set prices, did not participate in the restaurant's net profits and losses, and could not terminate the franchise before expiration of its terms except for a material breach by Towru's. As the trial court recognized, appellant purposefully structured the agreement to avoid any possibility that it would be deemed the entity operating or conducting the restaurant business on the leased premises, or that Towru's was operating that business on appellant's behalf. (See generally, *Cislaw v. Southland Corp., supra,* 4 Cal.App.4th 1284 [franchisor's interest in reputation of its entire system allows it to exercise certain controls without risk of transforming its independent contractor franchisee into an agent].) Appellant established a method of operation intended to immunize or insulate itself from the risks and liabilities inherent in the ownership of its franchisee's business, and has not explained how that same agreement can simultaneously make it an owner of the business for the sole purpose of these condemnation proceedings. To reword slightly an old cliché, appellant cannot have its pancakes and eat them, too.

Appellant's alternative theory is that it was entitled to compensation because it actively pursued its own business interests on the property taken, i.e., its interests in overseeing, assisting, and controlling operation of the franchised restaurant. Appellant reasons that under these circumstances, principles of fairness require its compensation for loss of business goodwill.

---

[7]Ordinarily, whether an agreement creates an agency is a question of fact, and the declarations of the agreement regarding the nature of the relationship are not dispositive. (*Cislaw v. Southland Corp., supra,* 4 Cal.App.4th at pp. 1288-1290.) Whether a partnership or joint venture exists is also generally a factual question. (*People v. Park, supra,* 87 Cal.App.3d at p. 564.) In this case, however, it is undisputed that there is no agency, joint venture, or partnership relationship between appellant and Towru's.

The argument ignores the respective roles of the Legislature and the court. ■ This court's limited task, of course, is to determine legislative intent so as to effectuate the purpose of the law. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155]; see § 1859.) We must first look to the words of the statute itself, giving to that language its usual, ordinary meaning. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 209 [271 Cal.Rptr. 191, 793 P.2d 524]; *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) When statutory language is clear, a court may not add to or alter it to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

■ It is undoubtedly true that appellant derives income from its franchisee's operation of the restaurant, and respondent does not take the position that appellant had no goodwill, even though that issue is not before us. But the Legislature did not authorize compensation for any and all business owners whose goodwill might have been affected by the taking of a particular parcel of real property. The Legislature has declared unambiguously that only the "owner of a business conducted on the property taken" may claim compensation for loss of goodwill, and this court is not free to alter the plain meaning of that statutory language and expand the category of persons who may seek compensation. Here, the business conducted on the property taken was the franchisee's retail restaurant; its owner was Towru's, not appellant. Summary judgment was properly granted.

DISPOSITION

The judgment is affirmed.

Stein, J., and Dossee, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 1992.