[No. D056737. Fourth Dist., Div. One. June 7, 2011.]

GALARDI GROUP FRANCHISE & LEASING, LLC, Plaintiff and Appellant, v.
CITY OF EL CAJON, Defendant and Respondent.

## COUNSEL

Cox, Castle & Nicholson, Edward C. Dygert and James R. Repking for Plaintiff and Appellant.

McDougal, Love, Eckis, Boehmer & Foley, Steven E. Boehmer, Randall R. Sjoblom and David M. Stotland for Defendant and Respondent.

## OPINION

McINTYRE, J.—Only the owner of the business conducted on condemned property may claim compensation for lost goodwill. (Code Civ. Proc., § 1263.510, subd. (a); undesignated statutory references are to this code.) In this inverse condemnation proceeding, we conclude that the trial court correctly held that the lessor of a business was not entitled to compensation for lost goodwill because it did not own the business located on the condemned property. Nonetheless, we conclude the trial court erroneously interpreted a clause in the agreement between the lessor and lessee purporting to "waive" the lessee's right to any condemnation award as benefiting the condemning authority. Thus, the trial court erred when it found a subsequent assignment of any condemnation award from the lessee to the lessor to be ineffectual. Accordingly, we reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Galardi Group Franchise & Leasing, LLC (Galardi), is listed with the California Department of Corporations as a franchisor doing business under

the name Wienerschnitzel. Galardi offers franchises as a "full franchise" where an individual or legal entity purchases, leases or subleases a location and fixtures and equipment, or a "limited franchise" where an individual or legal entity leases a location and fixtures and equipment on a month-to-month basis. One of its limited franchises included a Wienerschnitzel restaurant (the Restaurant) that formerly operated at 299 North Magnolia Avenue, El Cajon, California (the Premises). Galardi subleased the Premises to Mark D. Bingham (the Operator), who controlled the Restaurant on the Premises for almost 20 years under a written Operator Agreement (the Agreement).

In March 2005, Galardi received notice that the Premises it leased would likely be taken by eminent domain. In 2007, the Restaurant closed when the City of El Cajon (the City) acquired the Premises for a police facility. Although Galardi and the Operator tried to preserve the goodwill by relocating the Restaurant, they were unsuccessful.

On October 2, 2008, Galardi and the Operator executed an assignment whereby the Operator assigned any claim it had for lost goodwill compensation to Galardi. The following week, Galardi sued the City for inverse condemnation. Galardi alleged that it was entitled to lost goodwill compensation because it owned the Restaurant; however, to the extent the Operator may have been the owner of the Restaurant, it alleged that the Operator had assigned its rights to lost goodwill compensation to Galardi and thus it was also entitled to compensation as an assignee of the Operator.

The parties agreed to bifurcate the proceeding, with the trial court considering whether Galardi had any right to goodwill compensation, either as the owner of the Restaurant or as the assignee of the Operator's rights. Should the first phase be decided in Galardi's favor, a jury would then determine the amount of goodwill owed Galardi, if any.

The matter proceeded to trial, with the City relying on *Redevelopment Agency v. International House of Pancakes, Inc.* (1992) 9 Cal.App.4th 1343 [12 Cal.Rptr.2d 358] (*IHOP*) to argue that as a nonowner franchisor, Galardi was not entitled to compensation for lost goodwill. It further argued that the Operator was the business owner, but that it had no obligation to pay the Operator for lost goodwill compensation based on paragraph 15 of the Agreement whereby the Operator "waive[d]" its right to any condemnation award. The City reasoned that the assignment of the right to receive goodwill compensation that Galardi obtained from the Operator was ineffectual because the Operator had already waived its right to receive any condemnation award from any condemning authority, and thus had nothing to assign.

The trial court ultimately issued a judgment in favor of the City. In its statement of decision, the court concluded that the Operator, not Galardi, was

the business's owner, noting that a business license held the Operator out to be the owner of the business, and Galardi reported the Operator as a limited franchisee to the Department of Corporations. The trial court further concluded that because the Operator had no interest to assign, that the assignment was "ineffectual." Galardi timely appealed.

## DISCUSSION

### I.  Entitlement to Goodwill Compensation as an "Owner"

#### A.  Legal Principles and Standard of Review

■    The "owner" of a business conducted on property taken by eminent domain is entitled to be compensated for loss of goodwill caused by the taking. (§ 1263.510.) The purpose of the statute is to "provide monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location." (*People ex rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d 263, 270 [203 Cal.Rptr. 772, 681 P.2d 1340].) To recover lost goodwill, the claimant must prove, among other things, that it is the business owner, the loss was caused by the taking of the property or injury to the remainder, and the loss cannot reasonably be avoided by relocation of the business or by taking other measures and adopting procedures that a reasonably prudent person would take and adopt in preserving goodwill. (§ 1263.510, subd. (a).) The claimant has the burden of establishing that the necessary conditions exist which entitles it to compensation for loss of goodwill. (*Redevelopment Agency v. Thrifty Oil Co.* (1992) 4 Cal.App.4th 469, 475 [5 Cal.Rptr.2d 687].)

The trial court's threshold determination on entitlement to compensation for lost goodwill requires it to resolve any disputed facts (*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1119 [125 Cal.Rptr.2d 12]) and assess the credibility of witnesses relating to the existence of the requisite conditions (Evid. Code, § 780). We must examine the entire record and affirm the trial court's resolution of disputed factual issues so long as they are supported by substantial evidence. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 [197 Cal.Rptr. 925].)

#### B.  Analysis

Galardi asserts the trial court erred when it determined that Galardi was not a business owner within the meaning of section 1263.510 because it used an operator to run the Restaurant. It claims that the *IHOP* case is distinguishable

because the party seeking compensation was by its own admission a franchisor, whereas here, Galardi is not a franchisor, and the Operator is not a franchisee. To evaluate this argument we begin by reviewing *IHOP*.

In *IHOP*, a franchisee operated a restaurant on land leased by the franchisor. (*IHOP, supra*, 9 Cal.App.4th at p. 1346.) Under their agreement, the franchisor retained ownership of its trade name, goodwill, and trade secrets, but granted the franchisee the use of those intangibles. (*Ibid.*) The franchisee was obligated to operate the restaurant in compliance with standard procedures established by the franchisor, and required to purchase supplies only from the franchisor or its approved suppliers. (*Ibid.*) However, the agreement provided that the relationship between the parties was not a partnership, joint venture or agency, and that the franchisee could operate the restaurant in the manner it chose subject to provisions in their agreements and standard operating procedures. (*Id.* at p. 1347.) The franchisee paid an " 'initial fee' " of $50,000, plus rent, and a percentage of gross sales as a service charge. (*Ibid.*)

When a redevelopment agency brought an eminent domain proceeding, the franchisor claimed that it was entitled to damages for loss of business goodwill even though it had no partnership or joint venture relationship with the franchisee. (*IHOP, supra*, 9 Cal.App.4th at p. 1346.) Although the franchisor conceded that the franchisee was entitled to some compensation for lost goodwill, it argued that it had goodwill separate and distinct from that of the franchisee. (*Id.* at p. 1349.) The trial court granted summary judgment on the ground that the franchisor was not the owner of a business conducted on the property taken. (*Id.* at p. 1346.) The Court of Appeal affirmed, holding that the clear statutory language provided that only the " 'owner of a business conducted on the property taken' " may claim compensation for loss of goodwill, and that the franchisor's activities in overseeing, assisting, and controlling the operation of the restaurant did not entitle it to compensation for loss of goodwill. (*Id.* at pp. 1351–1352.)

The Agreement at issue is similar to the franchise agreement in *IHOP*. Here, Galardi granted the Operator the right to use the Wienerschnitzel system, trade name and trademark. The Operator was obligated to operate the Restaurant in compliance with the Wienerschnitzel operations manual and any supplement issued by Galardi, and required to purchase supplies only from Galardi or its approved suppliers. Additionally, the Agreement specified that Galardi had no right to control the management of the business, and that the relationship between the parties was not a partnership, joint venture or agency.

Galardi attempts to distinguish *IHOP* by arguing that the Agreement did not satisfy the legal requirements of creating a franchisor-franchisee relationship because the Operator did not pay a franchise fee, and the Agreement was terminable on short notice rather than the 180 days' notice required for franchises under Business and Professions Code section 20025. Galardi's focus on the franchisor-franchisee relationship between the parties in *IHOP* is misplaced as the claimant in *IHOP* was not barred from recovering goodwill damages simply because it was a franchisor. Rather, the court examined the agreement and other exhibits presented by the parties to determine, as a matter of law, whether the claimant owned the business, or whether an agency, joint venture or partnership relationship existed showing some indicia of ownership. (*IHOP, supra*, 9 Cal.App.4th at pp. 1347, 1350–1351.)

Similarly here, there was no indication of ownership by Galardi. Additionally, the Agreement required that the Operator indemnify Galardi from any and all claims or liabilities related to the Premises, and any losses suffered by the Operator, Galardi or third parties related to the Operator's use of the Premises. Like the claimant in *IHOP*, Galardi "established a method of operation intend[ing] to immunize or insulate itself from the risks and liabilities inherent in the ownership of [a] business, and has not explained how that same agreement can simultaneously make it an owner of the business for the sole purpose of these condemnation proceedings." (*IHOP, supra*, 9 Cal.App.4th at p. 1351.) Accordingly, the trial court properly concluded that Galardi was not the owner of the business within the meaning of section 1263.510.

## II.   *Entitlement to Goodwill Compensation as an Assignee*

The Agreement contained a waiver clause stating that "[i]f all or any part of the premises is condemned for public or quasi-public use, Operator waives all right to or interest in any condemnation award or settlement." The trial court interpreted this provision as providing that the Operator waived any condemnation recovery from a condemning agency. Because the Operator had no right to recovery from a condemning agency, the trial court reasoned that the later executed assignment purporting to give Galardi the Operator's right to any condemnation recovery was ineffectual because the Operator had nothing to assign. Thus, the City had no obligation to pay lost goodwill compensation to Galardi or the Operator based on how Galardi wrote its agreements.

Galardi argues that the waiver clause was intended to benefit it, not any condemning agency, and that the trial court's interpretation of the clause was contrary to the standard rules for the interpretation of contracts and basic common sense. We agree with Galardi.

During oral argument the City asserted that Galardi improperly raised this issue for the first time in its reply brief. We reject this contention as Galardi argued in its appellant's brief that the parties to the Agreement did not intend to benefit the City and that the trial court misinterpreted the Agreement. Galardi also argued to the trial court that the waiver clause should be interpreted as an assignment agreement between the parties.

■ The goal of contract interpretation is to ascertain the parties' mutual intent at the time of contracting. (Civ. Code, § 1636.) The mutual intent of the parties is determined by the words used in the agreement, which are to be understood in their ordinary and popular sense. (Civ. Code, § 1644.) To assist in ascertaining the meaning of disputed words used in a contract, the trial court will provisionally receive extrinsic evidence that is relevant to show whether the contract is reasonably susceptible to a particular meaning. (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [75 Cal.Rptr.2d 573].) The trial court should consider such extrinsic evidence even if the language of the contract could be considered unambiguous on its face. (*Ibid.*) A trial court's ruling on the threshold question of ambiguity presents a question of law subject to our independent review (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554]) and the interpretation of a contract presents a legal question when no extrinsic evidence is introduced, or the competent extrinsic evidence is not conflicting (*id.* at p. 1166).

Here, the statement of decision contains no indication that the trial court relied on any extrinsic evidence to interpret the waiver clause. Additionally, the parties did not cite to any such evidence in their respective briefs. Our review of the record reveals that the Operator offered the only testimony regarding the waiver clause. The Operator testified that he expected to be bound by the provision in the Agreement stating "that I have no right to any [condemnation] award or settlement." At deposition, the Operator similarly testified that he understood the waiver clause to mean that he would not receive any money whatsoever if the property were condemned. This testimony, however, basically repeated what the waiver clause already said. It did not address the issue in dispute, i.e., whether the parties intended the Operator to surrender his right to a condemnation award to a condemning agency, or assign his right to any condemnation award to the other party to the transaction. Thus, the trial court's interpretation of the waiver clause was a conclusion of law based on the language of the Agreement, which we review de novo. (*Winet v. Price, supra*, 4 Cal.App.4th at p. 1166.)

■ We conclude that the parties intended the waiver clause to define their respective rights to goodwill damages vis-à-vis one another. First, a tenant and landlord may apportion a condemnation award any way they see fit, and a tenant may assign his rights in a condemnation award. (*Chhour v.*

*Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 283 [53 Cal.Rptr.2d 585].) Thus, it appears more likely that the parties were defining their respective rights to goodwill damages vis-à-vis one another, rather than benefiting a nonparty to the Agreement. (*New Haven Unified School Dist. v. Taco Bell Corp.* (1994) 24 Cal.App.4th 1473, 1482 [30 Cal.Rptr.2d 469] [lessee's waiver of right to recover bonus value of a lease interpreted to mean lessee assigned it to the other party to the transaction, not that the lessee intended to surrender this right to the public agency].)

■ Moreover, while it is not necessary for a third party to be specifically named in a contract, the third party bears the burden of proving that the provision sought to be enforced was actually made to it personally or to a class of which it is a member. (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 348–349 [87 Cal.Rptr.2d 856].) It makes no sense that Galardi or the Operator intended the waiver clause to benefit a nonparty to the Agreement, and the City has not shown this is what the parties intended. Rather, we interpret the waiver clause in the Agreement as relating to the rights of the parties to the contract and not a nonparty to the contract.

The actions of the parties to the Agreement also support this interpretation. Presumably in anticipation that Galardi might not be considered to be the owner of the business, Galardi and the Operator executed the assignment whereby the Operator assigned any claim it had for compensation for lost goodwill to Galardi. This action confirms that Galardi and the Operator did not believe the waiver clause barred the Operator from obtaining a condemnation award from a condemning agency, and reaffirmed their intent that Galardi be entitled to any such award. (*Kennecott Corp. v. Union Oil Co.* (1987) 196 Cal.App.3d 1179, 1189 [242 Cal.Rptr. 403] ["The conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions."].)

■ Finally, to construe the waiver provision as the City suggests would unjustly allow it to avoid paying *any* compensation for lost goodwill for its taking of the Premises. (Civ. Code, § 1638; *ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1269 [35 Cal.Rptr.3d 343] [court must interpret a contract in a manner that is reasonable and does not lead to an absurd result].)

On remand, the trial court must determine whether Galardi has proven the remaining statutory elements showing entitlement to compensation for lost goodwill as an assignee, and if so, empanel a jury to determine the amount of any compensation for lost goodwill.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings in accordance with this opinion. Appellant is to recover its costs of appeal.

McDonald, Acting P. J., and Aaron, J., concurred.