[No. B234198. Second Dist., Div. Six. Nov. 28, 2012.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent, v.
DRY CANYON ENTERPRISES, LLC, Defendant and Appellant.

488

**COUNSEL**

Century Law Group, Edward O. Lear and Daniel A. Woodford for Defendant and Appellant.

Ronald W. Beals, David Gossage, Lucille Baca, Helen Cramer and Stephen A. Silver for Plaintiff and Respondent.

## OPINION

**HOFFSTADT, J.**[*]—When the state exercises its power of eminent domain over a parcel of land occupied by a business, the business owner has a right to have a jury determine the amount of "business goodwill" lost due to the taking. (Code Civ. Proc., § 1263.510.)[1] Here we decide whether the owner is entitled to a jury determination when the judge has determined, as a matter of law, that the business had no goodwill to lose in the first place. We are surprised to learn that no court has squarely decided this question. We are not surprised by the answer: Any determination on the loss of goodwill is not required when there was no goodwill to lose.

### FACTS AND PROCEDURAL HISTORY

Dry Canyon Enterprises, LLC (Dry Canyon), makes wine. Dry Canyon blends its wines mostly from grapes purchased from other vineyards and, to a lesser extent, from grapes grown on land it owns in Madera and Paso Robles, California. In its business plan, Dry Canyon planned to develop a flagship wine—an estate cabernet to be made from grapes grown on the Paso Robles land and to be marketed under the label "Chumeia." By 2009, Dry Canyon had blended and sold a few vintages of its Chumeia label wine, but had encountered persistent financial difficulties and had yet to turn any profit.

In 2009, the state's Department of Transportation (State) initiated eminent domain proceedings against a strip of Dry Canyon's Paso Robles property abutting Highway 46. The State needed the land as part of its project to widen the highway. That strip was home to 1,466 (or approximately 21 percent) of the cabernet vines Dry Canyon was growing for its estate cabernet. The State agreed to compensate Dry Canyon for the value of the land and vines, and issued a check for $203,500.

The parties went to trial before a jury on the only remaining issue—the amount by which the taking diminished Dry Canyon's business goodwill. The State's expert on goodwill valuation recounted that Dry Canyon was not profitable, and that its liabilities exceeded its assets. In light of these dire straits, the expert concluded that Dry Canyon never had any goodwill prior to the taking and accordingly experienced no loss of goodwill.

Dry Canyon's expert calculated the value of Dry Canyon's lost goodwill as $240,000. The expert reached this figure by averaging the results provided by two different methodologies.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

The first methodology was the "cost-to-create" methodology. Using this methodology, the expert viewed Dry Canyon's lost goodwill as the cost it incurred to create that goodwill in the first place. Rather than calculate the cost to create the 1,466 cabernet vines that were lost, however, the expert added up the sum total of every expense Dry Canyon had incurred during the first four years of its operations in both Madera and Paso Robles; the expert then divided those costs by four because the State took one-fourth of the vines destined for the estate cabernet. He opted to use *all* of Dry Canyon's costs because, in his view, *all* of the company's operations were "aimed at" cultivating the estate cabernet.

The second methodology was one the expert invented himself. He called it "premium pricing." The expert estimated that Dry Canyon's estate cabernet would one day fetch a premium price of $10.62 more per bottle than a hypothetical but inferior Madera-grown wine. The expert then multiplied this lost premium by his estimation of the number of bottles of estate cabernet that could no longer be produced in the next 15 years because of the taking. He called the total "lost goodwill."

After the parties rested, the State moved for a nonsuit on the ground that Dry Canyon had not proven it had any business goodwill to lose. Treating the motion as a motion for judgment, the trial court agreed with the State. In reaching this conclusion, the court rejected the testimony of Dry Canyon's expert. The court found the cost-to-create methodology to be a reliable measure of lost goodwill only when a business "clearly had goodwill" to start with, and when the taking caused a "total loss of goodwill." Neither fact was present in this case. The court viewed the premium pricing methodology as little more than "a disguised attempt to seek lost profits from a single product which is assessed in a vacuum." Because Dry Canyon presented no other evidence of preexisting goodwill, the court granted judgment for the State.

## DISCUSSION

Dry Canyon argues that the trial court's ruling is wrong for two reasons. *First*, the court erred in taking the case away from the jury because the existence of pretaking goodwill is never a question for the court. *Second*, the court erred in rejecting Dry Canyon's expert testimony, which amply established that Dry Canyon had preexisting goodwill. We reject both arguments.

### I. *The Court May Determine a Business Has No Goodwill to Lose*

When the State condemns property, its owner has a constitutional right to "just compensation." (U.S. Const., 5th Amend.; Cal. Const., art. I, § 19.) That right does not, however, provide compensation for the loss of

goodwill. (*Hladek v. City of Merced* (1977) 69 Cal.App.3d 585, 589 [138 Cal.Rptr. 194].) To remedy this perceived unfairness, our Legislature in 1975 created a statutory right for business owners to obtain recompense for loss of goodwill. (§ 1263.510.)

The Legislature defined "goodwill" as "the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." (§ 1263.510, subd. (b).) A business owner has the right to a jury determination on the *amount* of goodwill lost. (*Redevelopment Agency of San Diego v. Attisha* (2005) 128 Cal.App.4th 357, 367 [27 Cal.Rptr.3d 126] (*Attisha*).) However, this right attaches only if the owner first meets "the qualifying conditions for such compensation. [Citation.]" (*City of Santa Clarita v. NTS Technical Systems* (2006) 137 Cal.App.4th 264, 270 [40 Cal.Rptr.3d 244].)

The qualifying conditions that establish the owner's entitlement to a jury trial on the amount of compensation are set forth in section 1263.510, subdivision (a). The owner must prove that the goodwill loss "is caused by the taking of the property" (*causation*); "cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill" (*unavoidability*); and will not be duplicated by relocation payments under Government Code section 7262 or "in the compensation otherwise awarded to the owner" (*no double recovery*). (§ 1263.510, subd. (a); see *City of San Diego v. Sobke* (1998) 65 Cal.App.4th 379, 395 [76 Cal.Rptr.2d 9] (*Sobke*).)

█ Here we decide whether we should add proof of preexisting goodwill to this list of qualifying conditions. Because this is a question of statutory interpretation, our review is de novo. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 [122 Cal.Rptr.3d 331, 248 P.3d 1185].) For the reasons described below, we hold that a business owner is entitled to a jury trial on the amount of goodwill lost by a taking only if he or she first establishes, as a threshold matter, that the business had goodwill to lose.

This conclusion is all but compelled by the language of section 1263.510, subdivision (a). Each of the qualifying conditions enumerated in that section refers to loss of goodwill. Because "a finding that the [business] had no goodwill to lose would preclude a finding of the . . . statutory preconditions to recovery" (*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1118, fn. 13 [125 Cal.Rptr.2d 12] (*Emeryville*)), the *existence* of goodwill itself is necessarily an implicit, but essential, precondition to recovery. We now make it a precondition.

■ Our conclusion is reinforced by the canons of statutory construction. We are mindful that remedial statutes like section 1263.510 are to be construed liberally to effectuate their purpose. (*People ex rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d 263, 269 [203 Cal.Rptr. 772, 681 P.2d 1340] (*Muller*).) However, that maxim gives way to the mandate that we may not construe statutes in a way that reaches absurd results. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 533 [120 Cal.Rptr.3d 531, 246 P.3d 612].) In our view, it makes no sense to hold a jury trial on the *amount* of goodwill lost if there was no goodwill to lose. (See *Sobke, supra,* 65 Cal.App.4th at pp. 398–399 [observing that "actual pretaking goodwill" is an essential ingredient for any valuation methodology "evaluating loss of goodwill"].)

Dry Canyon argues that this reading of section 1263.510 is inconsistent with our Supreme Court's decision in *Metropolitan Water Dist. of So. California v. Campus Crusade for Christ, Inc.* (2007) 41 Cal.4th 954 [62 Cal.Rptr.3d 623, 161 P.3d 1175] (*Campus Crusade*). We disagree. To begin with, *Campus Crusade* addressed compensation under the Constitution—not compensation under the procedures of section 1263.510. Even within the context of takings under the Constitution, however, *Campus Crusade* reaffirmed the trial court's gatekeeping role in deciding whether the party whose land is taken has adduced "sufficient evidence to permit the jury" to hear certain claims for compensation. (*Campus Crusade, supra,* at p. 970, italics omitted.) Our holding today does the same.

■ Of course, a trial court exercises wide discretion in deciding how it carries out its gatekeeping role in requiring business owners to establish their business's preexisting goodwill. The court may opt to bifurcate the proceedings, deciding questions of entitlement at a pretrial hearing either by way of proffer or an evidentiary hearing at which factual disputes are resolved. (*City and County of San Francisco v. Coyne* (2008) 168 Cal.App.4th 1515, 1523 [86 Cal.Rptr.3d 255] (*Coyne*).) Alternatively, where proof of preexisting goodwill and valuation overlap (as they often do), the court may opt to conserve judicial resources by allowing the owner to present evidence to the jury subject to a later ruling by the court on issues of entitlement. (Accord, *Campus Crusade, supra,* 41 Cal.4th at p. 972.)

We leave for another day precisely what burden the business owner bears. The statute does not specify whether the owner need only adduce enough evidence to enable a jury to find that goodwill existed prior to the taking (see *Attisha, supra,* 128 Cal.App.4th at p. 381), or whether the owner must prove its existence to the court's satisfaction (see *Emeryville, supra,* 101 Cal.App.4th at p. 1119). That question is not presented because the trial court here found

Dry Canyon did not present *any* competent evidence of preexisting goodwill. We now turn to whether the trial court correctly assessed Dry Canyon's evidence.

II. *The Trial Court Did Not Err in Concluding That Dry Canyon Had Not Adduced Substantial Evidence of Goodwill*

■ The trial court granted judgment for the State after finding that Dry Canyon had not established it had goodwill to lose. We review the trial court's ruling for substantial evidence. (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528 [86 Cal.Rptr.2d 473] [substantial evidence review for motions for judgment]; *Galardi Group Franchise & Leasing, LLC v. City of El Cajon* (2011) 196 Cal.App.4th 280, 284 [125 Cal.Rptr.3d 394] [substantial evidence review of questions of entitlement under § 1263.510].) Because Dry Canyon's only evidence of goodwill was provided by its expert, our review ends up turning entirely on the propriety of the trial court's exclusion of the expert's testimony. Trial judges have a substantial gatekeeping responsibility when it comes to expert testimony. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 at p. 769.) In particular, courts are to ensure that opinions are not speculative, based on unconventional matters or grounded in unsupported reasoning. (*Id.*, at pp. 771–772.) We review a court's execution of these gatekeeping duties for an abuse of discretion. (*Sobke, supra*, 65 Cal.App.4th at p. 396.)

A. *Cost-to-create methodology*

Dry Canyon contends that the trial court was wrong not to accept its expert's valuation based on the cost-to-create methodology because that methodology had specifically been approved by the Court of Appeal in *Inglewood Redevelopment Agency v. Aklilu* (2007) 153 Cal.App.4th 1095 [64 Cal.Rptr.3d 519] (*Aklilu*). The trial court acknowledged *Aklilu*'s holding, but refused to transplant *Aklilu*'s approval of the cost-to-create methodology to the very different context of this case. The trial court was within its discretion in making this call.

■ Although there is no single acceptable method of valuing goodwill (*Muller, supra*, 36 Cal.3d at p. 271, fn. 7), the methodologies used to value goodwill are by and large based on a business's profitability (*id.*, at p. 268; *Community Development Com. v. Asaro* (1989) 212 Cal.App.3d 1297, 1302 [261 Cal.Rptr. 231]; *People ex rel. Dept. of Transportation v. Leslie* (1997) 55 Cal.App.4th 918, 922–923 [64 Cal.Rptr.2d 252]; *Attisha, supra*, 128 Cal.App.4th at p. 363). The predominance of profit-based yardsticks is a function of what goodwill represents. Goodwill is the amount by which a

business's overall value exceeds the value of its constituent assets, often due to a recognizable brand name, a sterling reputation, or an ideal location. (*Attisha, supra*, at p. 367 [defining "goodwill" as "the amount a willing buyer would pay for a going concern above the book value of the assets"].) Regardless of the cause, however, goodwill almost always translates into a business's profitability. Experts, in turn, look to profitability as a gauge for valuing goodwill.

But it is nevertheless possible for a business to have goodwill but no profit, and *Aklilu* is the exception that proves the general rule. The oil and lube business in *Aklilu* was profitable except for four of the last six years when nearby construction made access difficult. (*Aklilu, supra*, 153 Cal.App.4th at pp. 1102–1111.) It was clear, however, that the business had goodwill due to its superior location and lack of any competition. (*Id.*, at p. 1102.) When the State sought to condemn all the business's property, the issue in *Aklilu* became how to value goodwill when the construction had distorted the company's profits and made profitability an unrepresentative bellwether for goodwill. In that unusual situation, the *Aklilu* court held that it would be permissible for an expert to equate the costs incurred in creating the business's goodwill with the value of the goodwill itself. (*Id.*, at pp. 1102–1111.) However, the court in *Aklilu* was careful to limit resort to the cost-to-create methodology to those cases where there was clear proof of preexisting goodwill *and* a total loss of that goodwill. (*Ibid.*)

The trial court did not abuse its discretion in heeding *Aklilu*'s limits. As *Aklilu* implicitly recognized, unless there is independent proof that a business possesses goodwill in the first place, the cost-to-create methodology does not reflect the cost of creating any actual goodwill. Instead, it simply adds up costs and calls the total "goodwill." The relationship between goodwill and the costs to create breaks down even further when the condemnation takes only a portion of the business's goodwill. In that situation, it becomes necessary to figure out which costs match up with which portions of goodwill that are lost; in most cases, this will devolve into an exercise in futility or fiction. It is for all these reasons that *Aklilu* explicitly limited its holding. Indeed, similar considerations prompted the court in *Sobke* to reject expert testimony that sought to add up a business's increased operating expenses and call the total "goodwill." (*Sobke, supra*, 65 Cal.App.4th at pp. 398–399.) Because the trial court's ruling was consistent with the weight of this precedent, we affirm its ruling in this regard.

## B. *Premium pricing methodology*

Dry Canyon also argues that the trial court was incorrect to reject its premium pricing methodology. We see no abuse of discretion. This methodology was invented by Dry Canyon's expert, and its novelty is itself a reason to doubt its legitimacy. (*Aklilu, supra*, 153 Cal.App.4th at p. 1107.)

 More importantly, this methodology does not withstand scrutiny. As the trial court noted, it is inherently subjective. That is because the "premium" that drives the value of the business's goodwill depends largely on which competitive product is chosen. The selection of this product is entirely within the expert's control, and therefore subject to manipulation. Furthermore, at bottom this methodology calculates lost future profits on a product that has yet to be profitable, and labels these speculative losses "goodwill." Because the goodwill statute is not meant to compensate for hypothetical or potential goodwill (*Redevelopment Agency of San Diego v. Mesdaq* (2007) 154 Cal.App.4th 1111, 1131 [65 Cal.Rptr.3d 372], overruled on other grounds in *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1111, fn. 7 [133 Cal.Rptr.3d 738, 264 P.3d 579]; *Coyne, supra*, 168 Cal.App.4th at pp. 1523–1526), the trial court properly rejected this methodology as well.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the State.

Gilbert, P. J., and Perren, J., concurred.