Filed 12/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISON FOUR

| | |
|---|---|
| SAFEWAY WAGE AND HOUR CASES. | B287103<br>(Los Angeles County<br> Super. Ct. No. BC349382<br>JCCP No. 4772) |

APPEAL from a judgment of the Superior Court of Los
Angeles County, Ann I. Jones, Judge. Affirmed.

Arias, Sanguinetti, Wang & Torrijos, Mike Arias,
Alfredo Torrijos and Craig Momita for Plaintiff and
Appellant.

Littler Mendelson, Margaret H. Gillespie, Philip L.
Ross and J. Kevin Lilly for Defendant and Respondent.

# INTRODUCTION

This is another in a series of cases in which former managers of Safeway supermarket stores sought unpaid overtime wages, claiming they had been misclassified as exempt executives under regulations applicable to the mercantile industry. Following trial, a jury found respondent Safeway, Inc. had proven that appellant William Cunningham had been an exempt employee (and thus was not entitled to overtime pay). On appeal, appellant asserts the trial court committed instructional error. In particular, he challenges an instruction based on language in this court's decisions in *Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440 (*Batze*) and *Heyen v. Safeway Inc.* (2013) 216 Cal.App.4th 795 (*Heyen*), directing the jury to classify any given task as exempt work whenever a manager engages in it "because it is helpful in supervising employees in the store or because it contributes to the smooth functioning of the store . . . ." Appellant also claims the court abused its discretion in admitting certain expert testimony, arguing it was speculative.

We clarify that a task does not become exempt merely because the manager undertakes it in order to contribute to the smooth functioning of the store. An instruction on the consideration of the manager's purpose, where appropriate, must inform the jury of relevant limiting principles outlined in the applicable regulations and recognized by our prior decisions. However, we conclude the trial court's instruction did not affect the jury's verdict.

Additionally, we find no abuse of discretion in the admission of the contested expert testimony under the circumstances of this case. We therefore affirm the judgment.

## BACKGROUND

### A. *The Parties and This Action*

Respondent operates a national chain of supermarkets. From March 2002 to October 2004, appellant worked at several of respondent's stores, serving as a First Assistant Manager (FAM) for most of that time. In 2002, two former Safeway managers filed a putative class action on behalf of all Safeway store managers and assistant store managers in California, alleging failure to pay overtime wages, among other claims. The trial court denied class certification. (*Batze, supra,* 10 Cal.App.5th at pp. 445-446; *Heyen, supra,* 216 Cal.App.4th at p. 799.)

Before and after the denial of class certification, numerous former Safeway managers, including appellant, filed complaints seeking unpaid wages on an individual basis. Appellant's action proceeded to trial in 2017.

### B. *Evidence at Trial*

Before trial, respondent conceded appellant had worked overtime during his employment, and the trial therefore focused on respondent's affirmative defense -- that appellant was subject to the executive exemption and was not entitled to overtime wages. (See *Heyen, supra,* 216

3

Cal.App.4th at p. 817 ["Exemptions are narrowly construed and, as affirmative defenses, must be proved by the employer"].) Because respondent bore the burden to prove this affirmative defense, the parties agreed respondent would present its case first, followed by appellant. At trial, the main dispute was whether appellant had spent most of his work time stocking shelves and checking (nonexempt work) as he claimed, or performing managerial tasks such as supervising, training, and disciplining employees, assessing store conditions, and filling out financial reports (exempt work), as respondent contended.

## 1. *Respondent's Evidence*
### i. *Lay Testimony*

George Arias, a retired Safeway District Manager who had overseen stores at which appellant worked, testified about the duties of FAMs. According to Arias, when the store manager was present, a FAM's primary responsibilities were to ensure checkers' productivity and service, sufficient stocking of products on the shelves, store cleanliness, and proper organization of stock in the back room of the store. FAMs were to direct subordinate hourly employees in carrying out these tasks, not to perform them on their own. Safeway stores could have as many as 145 employees, and FAMs would not be able to manage store activities if they were preoccupied with physical functions like checking or stocking. As part of their duties, FAMs walked the aisles of their stores to assess store conditions and respond to any

4

issues (performing a "store walk"), trained subordinates, scheduled shifts based on sales projections, and filled out financial reports.

When the store manager was not present, a FAM was responsible for the entire operation of the store. Based on his observations of appellant, Arias did not think appellant spent more than half his time engaged in physical labor. During his testimony, Arias recounted transferring appellant to a particular store to help prepare the store's back room for a "show-and-tell," a production of a model store demonstrating how a Safeway store should operate.

Corrine Fernando, who had worked alongside appellant as a bakery manager at one store, testified she had never seen appellant stock shelves, though she acknowledged her view of the store was obstructed. She explained that her department was responsible for stocking the bread aisle, and that hourly employees were specifically assigned to stock that aisle. According to Fernando, appellant would usually be found in the office. Amanda Deschner, who had worked with appellant as a night crew head clerk at another store, described receiving product orders from appellant. She recounted an instance in which she disagreed with one of appellant's order requests and discussed it with the store manager, only to be told, "if [appellant] asked you to do it, you do what he says." Deschner testified she had never seen appellant stock shelves, though she acknowledged occasionally seeing him checking. Finally, Jennifer Hansen, another night crew

head clerk who had worked with appellant, testified she did not recall ever seeing appellant stock shelves or check out customers.

## ii. *Banks's Expert Testimony*

Christina Banks, an industrial organizational psychologist, testified about the results of an observational study she had conducted at Safeway stores. She designed this observational study to measure how a representative sample of Safeway FAMs performed the job. During the study, observers followed 28 randomly selected FAMs and recorded the time they spent on every activity. The study was conducted after appellant's employment with respondent had ended and did not include any of the stores at which he had worked.[1]

The study showed the observed FAMs spent an average of 72.7 percent of their worktime on "managerial" activities, such as overseeing customer service, and only 27.3 percent of their time on "non-managerial" activities, such as stocking shelves. Only three of the 28 observed FAMs failed to spend more than half their worktime doing managerial work.[2]

[1] Prior to trial, appellant sought to exclude Banks's testimony because it did not constitute evidence of how he had spent his worktime at respondent's stores. The trial court denied this request.

[2] A report documenting the measurements and findings of the study was admitted into evidence. The report also included measurements and calculations accounting for time spent thinking "managerial thoughts" while engaged in different tasks, but Banks indicated she did not rely on that data in offering her opinions.

6

Based on these results, Banks opined the vast majority of FAMs spent more than half their time performing managerial work, and that it was realistic for respondent to expect its FAMs to do so.

On cross-examination, when asked if her study was representative of how appellant spent his worktime, Banks explained the study was "representative of what [FAMs] do" but she could not "speak to what [appellant] did in his job." She later confirmed on redirect that she was not attempting to "predict . . . what [appellant] did on any particular day."

## 2. *Appellant's Evidence*

Appellant testified at trial. He described his typical shift as mostly physically stocking and rearranging products on shelves. According to appellant, at one store, he spent 60-70 percent of his time stocking and 20 percent checking. At two other stores, he spent 70-80 percent of his time stocking, checking, and cleaning. He testified he never managed anyone in the various departments of his stores. Appellant admitted occasionally preparing various reports, but claimed they took very little time to complete. On cross-examination, he also admitted conducting store walks and delegating tasks to other employees, and confirmed he was responsible for correcting employees' performance deficiencies and for discipline.

Albert Kruger, a former store manager who oversaw appellant at one store, testified appellant was a "work horse," responsible for physically replenishing products.

Appellant was usually the only employee available to stock the shelves, and would spend 80-90 percent of his time stocking. He did very little office work and managed only himself.

Two other current and former FAMs testified they had spent the majority of their time doing physical work or checking customers. Both were observed in Banks's study and one of them, Lyle Parker, claimed he had been instructed to do only management work on the day of his observation and therefore did less checking than he normally did. When confronted with check-register data on cross-examination, however, he admitted he had spent similar time checking in the days surrounding the study.

### C. *Jury Instructions*

Aside from standard CACI jury instructions, the trial court also instructed the jury that respondent bore "the burden of proving by a preponderance of the evidence that [appellant] was an exempt employee and therefore not entitled to overtime compensation." The court instructed the jury on the elements of the executive exemption, including the requirement that the employee be "primarily engaged in" exempt work, and reiterated that respondent had the burden to prove each element by a preponderance of the evidence. In Instruction No. 31, the court gave lists of examples of exempt work (e.g., "interviewing, selecting, and training of employees," "directing the work of employees," and "disciplining employees") and nonexempt work (e.g.,

8

"stocking shelves," "cleaning the store," and "checking out customers").

Instruction No. 31 continued: "These examples of different tasks are not determinative of whether such tasks should be classified as exempt or non-exempt. A task may be exempt or non-exempt based on the reason that the person is doing the task. Understanding the manager's purpose in engaging in such tasks, or a task's role in the smooth operation of the store, is critical to the task's proper categorization as exempt or non-exempt. A task performed because it is helpful in supervising employees in the store or because it contributes to the smooth functioning of the store or any subdivision of the store is exempt, even though the identical task performed by an hourly employee for a different, non-managerial reason would be non-exempt.

"In making your decision, you may consider whether the manager is doing tasks that also are done by hourly employees. If the purpose of the manager in doing those tasks is to supervise employees and/or contribute to the smooth operations of the store or a recognized subdivision of the store, then those tasks must be classified as exempt."

A related instruction, Instruction No. 33, stated: "Identical tasks may be exempt or nonexempt based on the purpose they serve within the organization or department. Understanding the manager's purpose in engaging in such tasks, or a task's role in supervising employees in the store and/or contributing to the smooth operations of the store or a

9

recognized subdivision of the store, is critical to the task's proper categorization as exempt or non-exempt."

The trial court took much of the language of Instruction Nos. 31 and 33 from our decisions in *Batze*, *supra*, 10 Cal.App.5th 440 and *Heyen*, *supra*, 216 Cal.App.4th 795.  Appellant objected to the language dealing with the manager's purpose in undertaking the task, arguing this assessment applies only to tasks that are not also done by the manager's subordinates.  He argued that ignoring this limitation would mean any task would be exempt.  The trial court overruled his objection, concluding the instruction was supported by our precedents.[3]

The court also refused to give several instructions appellant requested, including ones involving:  (1) the elements of the exemption and a rebuttable presumption that any given task is nonexempt; (2) a list of categorically nonexempt tasks, which included stocking shelves and manning a cash register; and (3) advisements that an employee cannot engage in exempt work while at the same time doing other work, and that time spent "thinking managerial thoughts" while performing nonexempt tasks must be classified as nonexempt.

---

[3]     Although respondent asserts that appellant later acquiesced in Instruction Nos. 31 and 33, our review of the record satisfies us that appellant has preserved his objection to those instructions.

**D. *Closing Arguments***

In closing, respondent's counsel highlighted the various managerial responsibilities entrusted to appellant as a FAM according to Arias's testimony, and argued that with all appellant's managerial assignments, he could not have stocked or done other physical work for substantial portions of his time. Counsel also directed the jury to the testimony of appellant's coworkers who had not seen him stock shelves.

Turning to appellant's store walks, respondent's counsel contended this work was "the essential task of managing" and argued that although a FAM might occasionally move product on a shelf, the primary purpose of store walks was to assess store conditions. Counsel then cited the court's instruction that identical tasks may be exempt or nonexempt depending on their purpose.

As to Banks's observational study, respondent's counsel emphasized the relevance of the study to respondent's expectations: "Remember we concede that [appellant] isn't on that study. . . . But is it not realistic, if the company goes out and has a study done . . . and it shows that 28 managers were . . . doing their job that way, is it not realistic to expect that's how they manage stores?" In his rebuttal, counsel brought up appellant's work preparing a back room for the show-and-tell, and argued this task too was exempt, because it was done for training or demonstration purposes.

Appellant's counsel, on the other hand, pointed to testimony that appellant had spent most of his time

11

stocking, and argued he was merely "a filler." Attacking the observational study, counsel argued it was unreliable and emphasized it said nothing about appellant's work.

### E. *Verdict and Judgment*

After less than two hours of deliberations, the jury returned a special verdict finding, by a vote of 10-2, that respondent had proven appellant had been an exempt employee. The trial court subsequently entered judgment for respondent. Appellant timely appealed, challenging the trial court's jury instructions and its admission of Banks's testimony.

## DISCUSSION

### A. *Jury Instructions*

#### 1. *Governing Legal Principles*

##### i. *The Labor Code and the IWC's Wage Orders*

"California's Labor Code mandates overtime pay for employees who work more than 40 hours in a given work week. (Labor Code, § 510, subd. (a).) However, the Legislature authorized the Industrial Welfare Commission (IWC) to establish exemptions for various categories of employees, including 'executive . . . employees,' where the employee is 'primarily engaged in the duties that meet the test of the exemption,' the employee 'customarily and regularly exercises discretion and independent judgment in performing those duties,' and the employee 'earns a monthly

12

salary equivalent to no less than two times the state minimum wage for full-time employment.' (Lab. Code, § 515, subd. (a).)" (*Batze, supra*, 10 Cal.App.5th at p. 471, fn. omitted.)

Utilizing its statutory authority, the IWC promulgated several Wage Orders, codified in the California Code of Regulations, setting forth criteria for determining whether an employee may be classified as an exempt executive.[4] (See Cal. Code Regs., tit. 8, § 11010 et seq.) As relevant here, Wage Order No. 7-2001 governs employees of the "mercantile industry."[5] (Cal. Code Regs., tit. 8, § 11070 (Wage Order).) To be an exempt executive under this Wage Order, an employee must, inter alia, be "primarily engaged in duties which meet the test of the exemption." (*Id.*, § 11070, subd. (1)(A)(1)(e).) "The [W]age [O]rder defines 'primarily' as 'more than one-half the employee's work time,'" and instructs the trier of fact to "look not only to the 'work actually performed by the employee during the workweek,' but also to the 'employer's realistic expectations and the realistic requirements of the job.'" (*Heyen, supra*, 216 Cal.App.4th at pp. 819, 828, quoting Cal. Code Regs., tit. 8, § 11070, subds. (1)(A)(1)(e), 2(K).) As to the nature of work, the Wage Order provides that exempt work and nonexempt

---

[4]  The IWC was defunded in 2004, but its wage orders remain in effect. (*Batze, supra*, 10 Cal.App.5th at p. 471.)

[5]  There is no dispute that respondent is in the mercantile industry.

work "shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order [2001]: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116."[6]

## ii. *The Federal Regulations*

According to the 2001 version of the federal regulations, determining whether a particular kind of work is exempt or nonexempt should usually be an easy task. "In the vast majority of cases[,] the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption." (§ 541.102(a).) Such functions include: "[i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the

---

[6]     Undesignated section references are to the 2001 version of title 29 of the Code of Federal Regulations.

flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property." (§ 541.102(b).)

But the federal regulations also recognize a category of exempt tasks that may not be so easily identifiable as exempt -- work "directly and closely related" to the management of a department and the supervision of employees. (§ 541.108.) "This phrase [work directly and closely related] brings within the category of exempt work not only the actual management of the department and the supervision of the employees therein, but also activities which are closely associated with the performance of the duties involved in such managerial and supervisory functions or responsibilities." (§ 541.108(a).) The regulations explain: "The supervision of employees and the management of a department include a great many directly and closely related tasks which are different from the work performed by subordinates and are commonly performed by supervisors because they are helpful in supervising the employees or contribute to the smooth functioning of the department for which they are responsible. Frequently such exempt work is of a kind which in establishments that are organized differently or which are larger and have greater specialization of function, may be performed by a nonexempt employee hired especially for that purpose." (*Ibid.*)

Section 541.108 provides several examples of tasks that, depending on the circumstances, may be "directly and closely related" to exempt work:

15

"(b) Keeping basic records of working time . . . is frequently performed by a timekeeper employed for that purpose. In such cases the work is clearly not exempt in nature. In other establishments which are not large enough to employ a timekeeper, or in which the timekeeping function has been decentralized, the supervisor of each department keeps the basic time records of his own subordinates. In these instances, . . . the timekeeping is directly related to the function of managing the particular department and supervising its employees. . . .

"(c) Another example of work which may be directly and closely related to the performance of management duties is the distribution of materials or merchandise and supplies. . . . In [some] establishments it is not uncommon to leave the actual distribution of materials and supplies in the hands of the supervisor. In such cases it is exempt work since it is directly and closely related to the managerial responsibility of maintaining the flow of materials. In a large retail establishment, however, where the replenishing of stocks of merchandise on the sales floor is customarily assigned to a nonexempt employee, the performance of such work by the manager or buyer of the department is nonexempt. . . .

"[¶] . . . [¶]

"(e) . . . a department manager or buyer in a retail or service establishment who goes about the sales floor observing the work of sales personnel under his supervision to determine the effectiveness of their sales techniques,

16

checking on the quality of customer service being given, or observing customer preferences and reactions to the . . . merchandise offered, is performing work which is directly and closely related to his managerial and supervisory functions. His actual participation, except for supervisory training or demonstration purposes, in such activities as making sales to customers, replenishing stocks of merchandise on the sales floor, removing merchandise from fitting rooms and returning to stock or shelves, however, is not. . . ."

Section 541.108(g) cautions that when dealing with the kinds of work described in this section -- work that is not inherently managerial or supervisory -- it is frequently difficult to distinguish "managerial type" tasks from "production operation[s]." It provides that "if work of this kind takes up a large part of the employee's time it would be evidence that . . . such work is a production operation rather than a function directly and closely related to the supervisory or managerial duties . . . ." (§ 541.108(g).)

As for nonexempt work, the regulations define it to include all work other than management and supervision, and directly and closely related work. (§ 541.111(a).) Section 541.111 explains: "Nonexempt work is easily identifiable where, as in the usual case, it consists of work of the same nature as that performed by the nonexempt subordinates of the 'executive.' It is more difficult to identify in cases where supervisory employees spend a significant amount of time in activities not performed by any of their

17

subordinates and not consisting of actual supervision and management.  In such cases[,] careful analysis of the employee's duties with reference to the phrase 'directly and closely related . . .' will usually be necessary in arriving at a determination."  (§ 541.111(b).)

### iii.  Batze v. Safeway *and* Heyen v. Safeway

This court has examined the exemption standards of the federal regulations in two prior cases in the string of Safeway overtime-wage cases, *Batze* and *Heyen*.  Both cases involved Safeway assistant managers who claimed they had spent more than 50 percent of their time doing nonexempt work and were therefore nonexempt employees entitled to overtime pay.

In *Heyen*, the trial court, aided by an advisory jury, found for the plaintiff.  (*Heyen, supra*, 216 Cal.App.4th at pp. 798-799.)  On appeal, Safeway contended the trial court failed to account for time the plaintiff had spent multi-tasking -- simultaneously performing exempt and nonexempt work -- and that all such time should be classified as exempt.  (*Id.* at p. 799.)  We rejected these contentions, explaining that "the regulations do not recognize 'hybrid' activities." (*Id.* at p. 822.)  We held that the trier of fact must separately classify each task as either exempt or nonexempt (*ibid.*), and where employees engage in concurrent performance of exempt and nonexempt work, categorization of that time will depend on their purpose in undertaking the activity (*id.* at

18

pp. 825-826 [approving instruction that jury must categorize time spent on concurrent performance of exempt and nonexempt work according to employee's purpose]). In so doing, we reviewed and discussed the standards set forth in the federal regulations, and identified several general principles. (*Id.* at pp. 819-821.)

Among other observations regarding the "work directly and closely related" category, we stated: "identical tasks may be 'exempt' or 'nonexempt' based on the purpose they serve within the organization or department. Understanding the manager's purpose in engaging in such tasks, or a task's role in the work of the organization, is critical to the task's proper categorization. A task performed because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department' is exempt, even though the identical task performed for a different, nonmanagerial reason would be nonexempt. (§ 541.108(a).)" (*Heyen*, *supra*, 216 Cal.App.4th at p. 822.)

However, we also recognized that "work of the same kind performed by a supervisor's nonexempt employees generally is 'nonexempt,' even when that work is performed by the supervisor" and that "[i]f such work takes up a large part of a supervisor's time, the supervisor likely is a 'nonexempt' employee. (§§ 541.108(g), 541.111(b), 541.115(b).)" (*Heyen*, *supra*, 216 Cal.App.4th at p. 822.) And we proceeded to highlight section 541.108's teaching that in a large retail setting, tasks such as restocking or making sales to customers are nonexempt unless done for training or

19

demonstration purposes. (*Heyen, supra*, at pp. 821, 822-823, citing § 541.108(c) & (e).)

Applying these principles to Safeway's argument, we concluded: "the regulations look to the supervisor's reason or purpose for undertaking the task[:] If a task is performed because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department for which [the supervisors] are responsible' (§ 541.108(a), (c)), the work is exempt; if not, it is nonexempt." (*Heyen, supra,* 216 Cal.App.4th at p. 826, italics omitted.)

We reviewed these principles again in *Batze*. There, the trial court ruled largely in Safeway's favor following a bench trial, finding that the plaintiffs, former Safeway First and Second Assistant Managers, had engaged in exempt managerial work for more than 50 percent of their time. (*Batze, supra,* 10 Cal.App.5th at p. 444.) On appeal, we affirmed, rejecting the plaintiffs' challenges to the sufficiency of the evidence to support the trial court's findings. (*Id.* at p. 445.) In doing so, we repeated *Heyen*'s statements that "'[i]dentical tasks may be "exempt" or "nonexempt" based on the purpose they serve,'" that "'[u]nderstanding the manager's purpose . . . or a task's role in the work of the organization, is critical to the task's proper categorization,'" and that "'[a] task performed because it is "helpful in supervising the employees or contribute[s] to the smooth functioning of the department" is exempt, even though the identical task performed for a different, nonmanagerial reason would be "nonexempt." [Citation.]'" (*Batze, supra,* at

20

p. 474, quoting *Heyen*, *supra*, 216 Cal.App.4th at pp. 822-823.) But we also noted the regulations' admonishment, recognized in *Heyen*, that in large retail settings, restocking or making sales to customers is nonexempt unless done for training or demonstration purposes. (*Batze*, at p. 473, quoting *Heyen*, at pp. 820-821.)

Based on these principles, we rejected the plaintiffs' contention that the trial court had erred in classifying certain tasks as exempt. (*Batze*, *supra*, 10 Cal.App.5th at pp. 480-481.) As relevant here, the plaintiffs contested the categorization of the following tasks: (1) scanning "out-of-stocks," which involved "walk[ing] the aisles to see whether the store was low on any product" and "scan[ning] bar codes to trigger the warehouse to send more product" (*id.* at pp. 447, 480); and (2) managing the "front-end," which the plaintiffs alleged consisted mostly of "checking, bagging and performing other routine services for customers" (*id.* at p. 481).

As for scanning out-of-stocks, we acknowledged this task could be done by hourly employees. (*Batze*, *supra*, 10 Cal.App.5th at p. 480.) However, citing the "work directly and closely related" category and *Heyen*'s discussion of the need to examine a task's purpose, we concluded the trial court was entitled to find that "[w]hen performed occasionally by an [assistant manager], . . . scanning out-of-stocks was exempt because it assisted the [assistant manager] to fulfill his or her managerial responsibility for determining when and where out-of-stocks occur and

21

minimizing them." (*Batze, supra*, at pp. 480-481, citing *Heyen, supra*, 216 Cal.App.4th at p. 822.) In other words, while both managers and their subordinates could engage in the seemingly identical work of scanning out-of-stocks, the managers' periodic performance of this task served a different function that was "directly and closely related" to the management and supervision of their stores. (See *ibid.*)

In contrast, in rejecting the plaintiffs' argument that time they had spent at the front-end should have been classified as nonexempt, we concluded the evidence showed assistant managers "were put at the front to improve customer service by observing the checkers . . . to determine whether they were working efficiently and providing satisfactory customer service"; they were "to observe and manage, not to check." (*Batze, supra*, 10 Cal.App.5th at p. 481.) With these principles in mind, we consider appellant's claims of instructional error.

### 2. *Analysis*

Appellant challenges the trial court's jury instructions about the categorization of appellant's work, complaining about both instructions the court gave and instructions he claims the court refused to give. We review claims of instructional error de novo. (*Sander/Moses Productions, Inc. v. NBC Studios, Inc.* (2006) 142 Cal.App.4th 1086, 1094.) "'In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given

22

conveys.'" (*Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 462.) "'"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."'" (*Ibid.*) Even when an instruction, or the failure to give an instruction, was erroneous, we generally will not reverse the judgment unless there is a reasonable probability the appealing party would have obtained a better result absent the error. (*Baumgardner v. Yusuf* (2006) 144 Cal.App.4th 1381, 1388 (*Baumgardner*).)

### i. *The Trial Court's Purpose Instructions*

Appellant challenges the trial court's jury instructions on the "work directly and closely related" category, which directed the jury to consider his purpose in performing any given task. He argues it was error to instruct the jury in Instruction No. 31 that "[a] task performed because it is helpful in supervising employees in the store or because it contributes to the smooth functioning of the store or any subdivision of the store is exempt . . . ." He also contests similar language in Instruction No. 33, which stated that "[u]nderstanding the manager's purpose . . . or a task's role in supervising employees in the store and/or contributing to the smooth operations of the store . . . is critical to the task's proper categorization . . . ." He claims this language in the

23

instructions conflicted with the regulations and erased any distinction between exempt and nonexempt tasks.

As noted, the trial court took the contested language from our opinions in *Batze* and *Heyen*. The court commendably sought to instruct the jury in accordance with the appellate courts' most recent pronouncements on the exemption's controlling standards. However, without the surrounding context of the regulations and the governing principles we acknowledged in *Heyen* and *Batze*, the language of the instructions may be confusing to a jury.

Initially, it is important to recognize the proper role of the purpose inquiry. The consideration of a manager's purpose in performing a particular task is intended to capture the narrow category of work that is not inherently managerial but is "directly and closely related" to management and the supervision of employees. (§ 541.108(a).) Under *Heyen, supra*, 216 Cal.App.4th at pages 825-826, this category may also include certain time spent concurrently performing exempt and nonexempt work. As the regulations acknowledge, both exempt and nonexempt work generally may be easily identified without resort to the "work directly and closely related" category. (See § 541.102(a) ["In the vast majority of cases[,] the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption"]; § 541.111(b) ["Nonexempt work is easily identifiable where, as in the usual case, it consists of work of the same nature as that performed by the

nonexempt subordinates of the 'executive'"].)  This category is irrelevant, and the purpose inquiry of no utility, in a factual dispute regarding the activities in which the manager engaged.  Thus, a trial court need not instruct the jury to consider the manager's purpose unless the employer's defense theory invokes the "work directly and closely related" category and substantial evidence supports its application.  (See *Joyce v. Simi Valley Unified School District* (2003) 110 Cal.App.4th 292, 303 ["An instruction correct in the abstract, may not be given where it is not supported by the evidence"]; *Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 209 ["Irrelevant . . . instructions need not be given"].)

When an instruction on the "work directly and closely related" category is appropriate, the court should not instruct that any task is exempt if the manager undertakes it because it "contributes to the smooth functioning" of the store.  A manager arguably intends to facilitate the smooth functioning of the store in performing *any* task otherwise done by hourly employees, be it mopping floors or returning shopping carts.  Neither the regulations nor our precedents construing them hold that a factfinder may find any such task exempt simply because it aids the store's operations.

Under the regulations, "work of the same kind performed by a supervisor's nonexempt employees generally is 'nonexempt,' even when that work is performed by the supervisor."  (*Heyen, supra*, 216 Cal.App.4th at p. 822.)  For work to be "directly and closely related" to managerial work,

25

it must be "different from the work performed by subordinates" (§ 541.108(a)); while it may be seemingly identical to tasks performed by the manager's subordinates, it must serve a different function, directly and closely related to the management and supervision of the store (see *Batze*, *supra*, 10 Cal.App.5th at p. 480). In a large retail setting, tasks such as stocking shelves or making sales to customers will not be included in this category unless done for training or demonstration purposes. (See *Heyen*, *supra*, at pp. 821, 822-823, quoting § 541.108(c) & (e); *Batze*, *supra*, at p. 473.) And if work that is not inherently managerial "takes up a large part of the employee's time," it is evidence that this work "is a production operation rather than a function directly and closely related to the supervisory or managerial duties . . . ." (§ 541.108(g); accord, *Heyen*, at p. 822.)

Trial courts instructing on the "work directly and closely related" category should moor it to its intended scope under the regulations by including these limiting principles, as relevant. Without these applicable principles, the description of the "work directly and closely related" category in Instructions Nos. 31 and 33 may be overbroad.[7]

---

[7]  Relying on section 541.108(b)'s discussion of the timekeeping example, appellant claims that the "work directly and closely related" category includes only certain tasks performed in "unusual circumstance[s] or [in] smaller or differently configured organizations," and is not applicable to Safeway's retail operations. While some examples of work in this category may be more typical in certain settings, section 541.108 does not limit the category to any particular setting. Indeed, our decision in *Batze* establishes this category could (*Fn. is continued on the next page*.)

26

In this case, however, we perceive no potential prejudice from the instruction. "In assessing prejudice from an erroneous instruction, we consider, insofar as relevant, '(1) the degree of conflict in the evidence on critical issues . . . ; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect . . . ; (3) whether the jury requested a rereading of the erroneous instruction . . . or of related evidence . . . ; (4) the closeness of the jury's verdict . . . ; and (5) the effect of other instructions in remedying the error . . . .'" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570-571 (*Soule*).)

The principal dispute at trial concerned how appellant spent the majority of his time, not the proper categorization of the tasks he performed. Appellant presented testimony that he was essentially a glorified stocker, spending most of his time stocking shelves, with no suggestion that he had any managerial purpose in doing so. Respondent, on the other hand, presented testimony that appellant spent the bulk of his time doing inherently managerial work, which was undisputedly exempt: supervising, training, and disciplining employees, preparing schedules using projected sales, monitoring store conditions, responding to problems, and filling out financial reports.

---

apply in standard large-retail operations. (See, *Batze*, *supra*, 10 Cal.App.5th at p. 480 [trial court permissibly found scanning out-of-stocks at Safeway stores was directly and closely related to exempt work].)

Respondent's closing argument similarly focused on undisputedly exempt work. Counsel argued that with all of appellant's inherently managerial responsibilities, he would not have had time to stock or do other menial work all day, as he claimed. At no point did respondent's counsel suggest stocking was exempt work. Moreover, counsel made only two brief references to the regulations' purpose inquiry. In discussing appellant's store walks, counsel contended this work was "the essential task of managing," claiming that although it might involve moving product on the shelf, the task's purpose was to assess store conditions. In so arguing, counsel referenced the instruction that identical tasks may be exempt or nonexempt depending on their purpose. In his rebuttal, counsel referenced the purpose inquiry a second time in asserting that appellant's work preparing a back room for the show-and-tell was exempt because he performed it for training or demonstration purposes. Both these references were unobjectionable, and at no point did counsel argue these tasks were exempt merely because they contributed to the smooth functioning of the store.

Appellant's counsel, in contrast, urged the jury to find credible the testimony of appellant and his witnesses that he spent more than 50 percent of his time stocking. The jury was thus presented with two starkly contrasting factual scenarios -- one in which appellant primarily managed and supervised, and the other in which he stocked shelves and checked out customers.

The jury sent no questions regarding the jury instructions and deliberated less than two hours before returning a verdict, indicating its members had little trouble reaching their respective conclusions in what was largely a credibility contest.  While the verdict was non-unanimous, the record suggests the disagreement revolved around the parties' factual claims, with 10 jurors accepting respondent's account, and two accepting appellant's.

Appellant emphasizes the trial court's instructions twice referenced the broad language about a task's helpfulness in supervising employees or its contribution to the smooth functioning of the store.  But absent a relevant body of evidence or related argument by counsel, the jury had no meaningful opportunity to apply this language in an objectionable way.  Given that the challenged instructions were largely irrelevant to the disputed issues at trial, that respondent's argument did not focus on it, and that the jury reached its verdict with relative ease, we find no reasonable probability that appellant would have obtained a more favorable result without the contested language in the instructions.  (See *Soule*, *supra*, 8 Cal.4th at pp. 570-571; *Baumgardner*, *supra*, 144 Cal.App.4th at p. 1388.)

### ii.  *Claims of Refused Instructions*

Appellant argues the trial court erred in failing to instruct the jury on three principles identified in *Heyen supra*, 216 Cal.App.4th 795: (1) that "work of the same kind performed by a supervisor's non-exempt employees generally

is 'nonexempt,' even when that work is performed by the supervisor" (*id.* at p. 822); (2) that in a large retail setting, tasks such as restocking or making sales to customers are nonexempt unless done for training or demonstration purposes (*id.* at pp. 821, 822-823); and (3) that "the regulations do not recognize 'hybrid' activities," but rather, that the regulations require each discrete task be separately classified as either exempt or nonexempt (*id.* at p. 822).

As to the first two principles, we observe initially that appellant did not request related instructions, and he has therefore forfeited any contention about them. (See *Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 655 [party may not challenge trial court's failure to give particular instruction when party did not request such instruction].) While he asserts the trial court refused relevant instructions, the proposed instructions he cites do not deal with these concepts, but instead involve a presumption of nonexemption, the elements of the exemption, and an admonition that time spent "thinking managerial thoughts" while performing nonexempt tasks must be classified as nonexempt.[8]  Moreover, while

---

[8]    Another instruction appellant proposed, but does not cite on appeal, stated that various tasks, including stocking and manning a cash register, were nonexempt, without mentioning any possible exception.  This requested instruction was incorrect -- as appellant recognizes, there are circumstances under which such work may be deemed exempt.  Thus, the trial court properly refused to give the requested instruction.  (See *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 684-685 ["A court may refuse a proposed
(*Fn. is continued on the next page.*)

30

instructions on these principles would have helped contextualize the trial court's purpose instructions, their omission was not prejudicial for the reasons discussed above.

As for the third principle, relating to hybrid activities, appellant concedes the trial court properly instructed the jury, in accordance with *Heyen*, that "each task must be separately classified as either exempt or non-exempt." He complains, however, that the court never told the jury the tasks could not be performed "at the same time," and suggests that concurrent performance of exempt and nonexempt activities must be considered nonexempt. Appellant cites no authority supporting such an instruction. To the contrary, in *Heyen*, this court held the factfinder must categorize concurrent performance of exempt and nonexempt work based on the manager's purpose in undertaking the activity. (*Heyen, supra*, 216 Cal.App.4th at p. 826.) We did not hold that such time must always be considered nonexempt. Accordingly, the trial court did not err in refusing appellant's requested instruction.

### B. *Banks's Expert Testimony*

Appellant claims the trial court should have excluded Banks's expert testimony as speculative. "Trial judges have a substantial gatekeeping responsibility when it comes to expert testimony. [Citation.] In particular, courts are to

---

instruction that incorrectly states the law . . . and ordinarily has no duty to modify a proposed instruction"].)

31

ensure that opinions are not speculative, based on unconventional matters or grounded in unsupported reasoning.  [Citation.]  We review a court's execution of these gatekeeping duties for an abuse of discretion.  [Citation.]" (*People ex rel. Dept. of Transportation v. Dry Canyon Enterprises, LLC* (2012) 211 Cal.App.4th 486, 493.)

Appellant argues Banks's opinion testimony was speculative in that she relied on an observational study of other FAMs, at other stores, after appellant had left Safeway, to "make predictions" about how he had spent his worktime.  He asserts that no sound methodology supported Banks's testimony and instead, that she merely assumed his typical work experience would be similar to that of FAMs observed in her study.

Respondent counters, and we agree, that appellant's argument is based on a false premise.  Contrary to appellant's claims, Banks offered no opinion on appellant's actual work experience or his typical workday.  Indeed, during her cross-examination, she stated she could not "speak to what [appellant] did in his job," and on redirect confirmed she was not attempting to "predict . . . what [appellant] did on any particular day."  Instead, Banks opined only that respondent's expectation that its FAMs would spend more than half their time on exempt work was realistic.  As explained, Wage Order No. 7-2001, applicable to respondent, requires the factfinder to consider "the employer's realistic expectations and the realistic requirements of the job" in determining whether the

32

employee "primarily engaged in duties which meet the test of the exemption." (Cal. Code Regs., tit. 8, § 11070, subd. (1)(A)(1)(e).) Banks's testimony was clearly relevant to this consideration.

Respondent's closing argument also cited Banks's study and testimony in the context of realistic expectations. Referencing the observational study, respondent's counsel explained its import to the jury: "Remember we concede that [appellant] isn't on that study. . . . But is it not realistic . . . to expect that's how they manage stores?" At no time did counsel suggest either the observational study or Banks's testimony established how appellant had actually spent his worktime.

Appellant does not contend that Banks's opinion of the realistic nature of respondent's expectations was speculative. Accordingly, the trial court did not err in admitting the contested evidence.[9]

---

[9] For the first time in his reply brief, appellant contends Banks's report and testimony constituted inadmissible hearsay under *People v. Sanchez* (2016) 63 Cal.4th 665. He has forfeited any contention in this regard by failing to raise it in his opening brief. (See *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726 [failure to raise argument in opening brief constitutes forfeiture].)

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

### CERTIFIED FOR PUBLICATION


MANELLA, P. J.


We concur:


WILLHITE, J.


COLLINS, J.